HANSON *v*. BROWN.

Opinion delivered May 26, 1919.

1. HOMESTEAD—DEFECTIVE CONVEYANCE—CURATIVE ACT.—Where a husband's mortgage of his homestead was defective for nonjoinder of his wife, but the defect was cured by Acts 1893, p. 303, the wife had no homestead interest in the land upon its sale under the mortgage.

2. EVIDENCE—PRESUMPTION.—One is presumed to know the law and to have asserted his rights under it.

3. VENDOR AND PURCHASER—FORFEITURE—WAIVED.—Where a vendor permitted the purchaser's wife and children to remain in possession of the property for sixteen years after breach, he waived his right of forfeiture, though he mistakenly supposed that his wife had a homestead interest in the land.

4. DESCENT AND DISTRIBUTION—PROPERTY SUBJECT TO DESCENT.—A vendee of land in possession under a bond for title has an estate descendible by inheritance.

5. SPECIFIC PERFORMANCE—LACHES.—The surviving wife and children of a purchaser, in possession of land under a bond for title were not precluded by limitation or laches from bringing a bill for specific performance, although their right was not asserted until the bringing of a suit to quiet title by the vendor's assignee; there being no necessity to sue for specific performance earlier.

6. PAYMENT—PURCHASE MONEY—SUFFICIENCY OF EVIDENCE.—In an action by a vendor's assignee against the purchaser's widow and surviving children, to quiet title to land, evidence held to show that purchaser had not paid the purchase money.

Appeal from Columbia Chancery Court; *J. M. Barker,* Chancellor; reversed.

STATEMENT OF FACTS.

On the 22nd day of March, 1917, J. G. Brown brought this suit in equity for the purpose of quieting his title to 200 acres of land in Columbia County, Arkansas.

J. T. Hanson and others were made parties defendants to the action and filed an answer denying that the plaintiff is the owner of 160 acres of the lands described in his complaint and also set up facts which entitled them to the specific performance of a contract of sale of the 160 acres of lands to themselves. The material facts are as follows:

The lands originally belonged to A. J. Hanson, deceased. He resided upon the 160 acres of lands in controversy in 1893 with his wife and children, and the lands constituted his homestead. He executed a deed of trust to said lands to J. T. Waller, as trustee, to secure an indebtedness which he owed to J. M. Waller. His wife did not join with him in the execution of this deed of trust. W. D. Stevens as substituted trustee, on the 30th day of April, 1898, sold said lands to J. M. Waller, the beneficiary in the deed of trust, for the sum of $209.60, and on the 6th day of May, 1899, executed to him a deed to said lands. On the 20th day of November, 1900, J. M. Waller entered into an executory contract in writing with A. J. Hanson for the sale of the said lands for the sum of $117. Among other provisions, the contract contained the following:

"One note of this date for $117 due and payable on the 1st day of November, 1901, and in his failure to make said payment when due, then the contract of purchase to cease and $40 rent to be paid for said land for the year 1901, with interest on said notes from date at ten per cent. until paid.

"Now if the said J. M. Waller shall, on the punctual payment of said notes, and all the taxes legally assessed on said land, and surrender to him of this instrument, convey or cause to be conveyed to the said A. J. Hanson, heirs or assigns, the above described premises with warranty of title, then this obligation to be void, otherwise not."

A. J. Hanson entered into possession of the lands pursuant to the contract and continued to live there with his wife and children until just before Christmas in 1900, when he moved from the lands into the State of Louisiana. It is about 25 miles from the lands in controversy to the place in Louisiana where A. J. Hanson moved. A. J. Hanson did not move to Louisiana for the purpose of living there permanently, but he did live there until he died on the 2nd day of October, 1902. In the meantime J. M. Waller had removed to the State of Texas and from that State wrote the following letter:

"Gorman, Texas, September 23, 1902.

"A. J. Hanson, Ware, Ark.

"Dear Sir: As you have knocked me out of selling that land I got from you, you must arrange the matter at once. I will not have any more foolishness about it. I let you have money on that land and have treated you better than I ought to have done, and now I will not suffer you to fool with me any longer. If you do not arrange the matter with Stevens, I will be there myself and will settle the land question in short order, so a hint to the wise is enough. See Stevens at once and have him to write me what you are going to do.

"Yours, etc."

A short time after the death of A. J. Hanson in 1902, his widow and some of his children moved back on the

lands in controversy and have been in possession of the same, either in person or through their tenants, ever since. During a part of this time they paid the taxes on the lands and during a part of it, J. M. Waller paid the taxes.

N. S. Hanson, one of the sons of A. J. Hanson, deceased, testified that he was 33 years of age and that J. M. Waller was his first cousin; that in the fall of 1900 his father went to town with some cotton and sold it; that his father then went to J. M. Waller's house and paid him the balance of the purchase price of the lands in controversy; that he heard J. M. Waller tell his father that this payment made them even; that he told his brother, L. G. Hanson, about this payment.

L. G. Hanson testified that he was notified that the note for the purchase price of the lands was due and unpaid and went to see the agents and attorneys of J. M. Waller about it; that he went home and his brother told him about his father having already paid for the lands; that he then went back and only paid to the agents and attorneys of J. M. Waller the amount necessary to redeem the lands from a tax sale.

J. M. Waller denied that any part of the purchase price of said lands had ever been paid to him. He said that he had allowed the widow and children of A. J. Hanson, deceased, to remain on the lands all these years for the reason that he was informed that she had a homestead interest in them and on that account was entitled to possession of them; that he allowed them to redeem from the tax sale at which he had purchased them, because he had been informed by his attorneys that it was the duty of the widow to pay the taxes by virtue of her homestead interest.

Each party testified as to the amount of taxes paid by himself. Jas. G. Brown, the plaintiff, purchased the lands from J. M. Waller with notice of the claim of the defendants.

The court found that the plaintiff, J. G. Brown, was the owner of the lands in controversy and decreed that his title to the same should be confirmed and quieted.

The court further found that the defendants are not entitled to a specific performance of the contract of November 20, 1900, for the reason that their cause of action was barred by the statute of limitations.

The court further decreed that the plaintiff should pay to the defendants the amount of taxes they had paid on the lands. The defendants have appealed.

*J. M. Kelso* and *McKay & Smith,* for appellants.

1. Brown purchased the land from Waller with full knowledge of appellants' rights and claims and is not entitled to insist upon a forfeiture. 48 Ark. 413; 87 *Id.* 600; 1 Pom. Eq. Jur., § 452. Waller recognized Hanson as a purchaser and not a tenant and he waived a forfeiture. If a forfeiture was demanded it was after the death of Hanson. 87 Ark. 394. The evidence sustains our contention that there was a waiver of forfeiture in that Waller permitted the Hanson heirs to redeem from him this land which sold for taxes. In addition, he made demand and received of the Hanson heirs payment of the taxes during the years that he paid himself. In this he recognized that they were in possession as purchasers and not as tenants. When Hanson died he was living in Louisiana. It is true that Mrs. Hanson never executed the deed of trust or any conveyance of this homestead, but this deed of trust was validated by the Acts of 1893, and the homestead was effectually conveyed, notwithstanding she did not sign or acknowledge the deed of trust. The only interest she had at her husband's death was dower, and she had no right to possession until her dower was assigned. Kirby's Digest, § 2704; 14 Cyc. 962; 111 Ark. 308; 106 *Id.* 13; 1 Cyc. 1005-6.

2. The statute of limitations was not pleaded by appellee and hence waived the right. 71 Ark. 164; 76 *Id.* 405; 100 *Id.* 543. Where the owner sells land and executes bond for title it is treated as a mortgage in favor

of the vendor to secure the purchase money subject to all the essential elements and incidents of a mortgage as if the vendor had conveyed by absolute deed and taken a mortgage back to secure the purchase money. 13 Ark. 533; 14 *Id.* 633; 15 *Id.* 188; 16 *Id.* 126; 27 *Id.* 61; 29 *Id.* 357; 34 *Id.* 113; 52 *Id.* 381; 66 *Id.* 167; 84 *Id.* 160.

The court erred in not permitting appellants to reclaim by paying the note for $117 and interest.

*Stevens & Stevens,* for appellee.

Appellants are not entitled to redeem, nor to specific performance. On the failure to pay the note A. J. Hanson became the tenant of Waller under the contract and as he held over after the expiration of his term he could be evicted. 48 Ark. 416; 87 *Id.* 600; 76 *Id.* 579.

Waller was advised that, the widow being in possession, it was her duty to pay the taxes and she had the right to redeem. 128 Ark. 605.

Both parties had abandoned the contract. If it was valid after the death of A. J. Hanson and appellants are not entitled to specific performance or of redemption. 113 Ark. 437; Bower on Waiver, § 212; 27 Cyc. 1820.

The father of appellants was guilty of laches and his heirs are chargeable with laches and the statutes run against the heirs. 55 Ark. 85. Equity denies relief to parties guilty of laches though not pleaded. 88 *Id.* 333. The complaint will be treated as amended to conform to the proof of the statute of limitations. 84 Ark. 37. Even if there was error in holding that appellants were barred by limitation, still if the decree is correct on the whole case, this court will not reverse. 73 Ark. 418; 85 *Id.* 127.

There was a forfeiture during their father's life which barred him from redeeming.

The only act of Waller's that may be considered a waiver of the forfeiture was the letter written at Gorman, Texas, in September, 1902, and received a few weeks later; that in considering this letter a waiver they would be bound by the conditions upon which the waiver

was based and required to accept the conditions named and to show that they did so accept. They did none of the requirements of the letter. They did not offer to redeem until after Waller's vendee sought to quiet his title, but had left the place and had not occupied it since 1907, and in their pleadings claim title by reason of paying taxes on it seven consecutive times. The decree refusing specific performance and the right to redeem is correct and should be affirmed. 128 Ark. 605.

HART, J., (after stating the facts). It appears from the record that in 1893, A. J. Hanson executed to J. T. Waller, as trustee, a deed of trust to the lands in controversy to secure an indebtedness which he owed to J. M. Waller and that his wife never joined him in its execution.

The act to render more effectual the constitutional exemption of homesteads, approved March 18, 1887, provides that no conveyance or mortgage affecting the homestead of any married man shall be of any validity except for taxes, laborer's and mechanic's liens, and the purchase money, unless his wife joins in the execution of such instrument and acknowledges the same. Kirby's Digest, section 3901.

The Legislature of 1893 passed an act to cure defective conveyances and acknowledgments which were defective or ineffectual by reason of not having complied with the act of March 18, 1887, above referred to. See Acts of 1893, p. 303. This act has the effect to validate the deed of trust from A. J. Hanson to J. T. Waller to secure an indebtedness to J. M. Waller.

W. B. Stevens, as substituted trustee, sold the lands pursuant to the terms of said deed of trust to J. M. Waller for the sum of $209.60 and executed a deed to him therefor, on the 6th day of May, 1899. On the 20th day of November, 1900, J. M. Waller entered into an executory contract of sale in writing with A. J. Hanson for sale of said lands for the sum of $117. The contract of sale provided that the note for the purchase money should

be due and payable on the first day of November, 1901, and that, upon the failure of A. J. Hanson to pay the note when due, the contract of purchase should cease and $40 rent should be paid for said lands for the year 1901. Under the terms of this agreement the vendor had the power, upon the failure of his vendee to pay the purchase money, to declare the contract of purchase at an end, and thereafter to establish the relation of landlord and tenant between the parties. See *Ish* v. *Morgan, McRae & Co.*, 48 Ark. 413, and *Souter* v. *Witt*, 87 Ark. 593. This, however, Waller failed to do. It is true Waller wrote Hanson a letter in September, 1902, reminding him that he had not paid the purchase money and threatening to take action in the matter at once, but so far as the record discloses, no action was ever taken by him in the premises. This letter was written almost a year after the purchase money became due. Hanson died soon after this letter was written, and in a few months thereafter his widow and some of his children moved back on the lands and have continued in possession thereof in person, or through their tenants, ever since. Waller did not make any attempt to oust them from the land. He gives as an excuse that he was advised by his attorneys that the widow of A. J. Hanson had a homestead interest in the lands and was therefore entitled to the possession of them.

For the reasons already given, it is apparent that Mrs. Hanson had no homestead interest in the lands and it is no excuse that J. M. Waller made a mistake about the law; for he is presumed to know the law and to have asserted his rights under it. His action, therefore, in allowing the defendants to continue in the possession of the lands after so long a period of time will be deemed a waiver of his right to a forfeiture under his contract with A. J. Hanson.

This brings us to a consideration of the prayer of the defendants and cross-complainants for specific performance. A. J. Hanson died intestate, leaving the defendants as his heirs at law. By virtue of the bond for

title from J. M. Waller to himself, he came into the possession of an estate which was descendible by inheritance, which at his death vested in his heirs at law. *Roach* v. *Richardson*, 84 Ark. 37. A. J. Hanson was left in possession of the land under this contract and he continued in possession until his death. His widow and heirs have been in possession in his right ever since. The continuation of their possession, by the tacit consent of J. M. Waller and his vendee, J. G. Brown, until the latter brought this suit to quiet his title and made the defendants parties thereto, was a constant and continued affirmance, on the part of them, that the holding of the defendants and their father was under the bond for title. There was no necessity for the defendants to bring a bill for specific performance until J. M. Waller, or his vendee, J. G. Brown, created the necessity by bringing an action for the lands. *Hargis* v. *Edrington*, 113 Ark. 433. To the same effect see *Waters* v. *Travis*, 9 Johnson's Rept. (N. Y.) 448; *Norman* v. *Bennett* (W. V.), 9 S. E. 914; *Coffey* v. *Emigh* (Col.), 10 L. R. A. 125; *Mudgett* v. *Clay* (Wash.), 31 Pac. 424, and *Western Railroad Corporation* v. *Babcock*, 6 Metc. (Mass.) 346.

Therefore, neither the statute of limitations, nor the doctrine of laches can have any application to the rights of the defendants to maintain their bill for specific performance.

The chancellor, however, found that the defendants had not paid the purchase money, and in this finding we think he was correct. It is true one of the defendants testified that he was with his father when he paid the purchase money in the fall of 1900 just before Christmas. He said that his father went to town with some cotton and after selling it paid off the note. He was 33 years of age when he testified and consequently was only 15 years old when this transaction occurred. J. M. Waller flatly contradicted his testimony and he is corroborated by the circumstances of the case. According to the testimony of N. S. Hanson, the money was paid to J. M. Waller at the latter's house. The note was not de-

livered to A. J. Hanson, but was retained in the possession of Waller. This is inconsistent with the fact of payment. Besides this, A. J. Hanson did not demand a deed, but on the contrary soon moved away from the lands to the State of Louisiana. When all the attending circumstances are considered, we are convinced the chancellor was right in holding that neither the defendants, nor their father ever paid the purchase money. For this reason a decree for the specific performance will not be granted to the defendants except upon their payment of the purchase money together with the accrued interest and the taxes which have been paid by J. M. Waller, or the plaintiff, J. G. Brown.

For the error indicated in the opinion the decree must be reversed, and the cause will be remanded for further proceedings in accordance with this opinion.