WADE *v.* TEXARKANA BUILDING & LOAN ASSOCIATION.

Opinion delivered October 10, 1921.

1. PRINCIPAL AND AGENT—APPARENT AUTHORITY.—Where vendors by their conduct held out a third party as authorized to collect payments from the vendee on his contract of purchase, they are estopped to deny that he had such authority.

2. VENDOR AND PURCHASER—WAIVER OF FORFEITURE.—Where vendors reserved the right after default to declare the contract of purchase at an end and to treat the purchaser as a tenant, such right is waived where after default they permitted the purchaser to remain in possession, make payments on the purchase money and pay the taxes, and where they never notified the purchaser that they considered his contract of purchase as forfeited and would thereafter treat him as a tenant.

3. COVENANTS—DAMAGES—EVIDENCE.—In a suit for breach of warranty in a deed, as a general rule, parol testimony is admissible to show the true consideration, for the purpose of increasing or diminishing the damages; but a grantor may estop himself by his conduct from disputing the specified consideration. ·

4 COVENANTS—LIABILITY OF COVENANTOR.—A covenant of warranty runs with the land; and where the purchaser or covenantee conveys, the covenant passes to his vendee or assignee, who may, in case of eviction or failure of title, recover from the original grantor the sum which the latter received from his grantee, with interest from the date of the conveyance to the last conveyance.

5 COVENANTS—LIABILITY OF COVENANTOR.—Where vendors wrongfully deeded land to a third person after their purchaser had paid for the land and was entitled to a deed in fee, and thereby enabled such grantee to defraud his mortgage, they are liable to the mortgagee, upon failure of the latter's title, to the extent of the consideration expressed in their deed, even though the true consideration was less than the express consideration.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*Jones & Head,* for appellants.

The contract of purchase automatically became null and void when payments were sixty days behind, and all payments made were forfeited as rents. 48 Ark. 413; 54 Ark. 16; 87 Ark. 593; 76 Ark. 578; 139 Ark. 60.

John W. Welch had no authority to collect payments. 49 Ark. 320; 96 Ark. 456. No one has the right to trust to mere presumption of authority, nor to the mere assumption of authority of an agent. 62 Ark. 33; 92 Ark. 315. He must ascertain his authority. 117 Ark. 173; 105 Ark. 111. An agent who is employed to solicit orders and make sales of goods not in his possession has no implied authority to require payment therefor. 100 Ark. 360; 101 Ark. 68. The existence of an agency cannot be established by proof of the acts and declarations of the agent. 122 Ark. 357; 131 Ark. 197; 126 Ark. 405. The authority of an agent cannot be proved by the mere fact that he exercised the authority. 53 Ark. 208; 105 Ark. 446.

The covenant of general warranty runs with the land. 31 S. W. 200; 11 Cyc. 1170; 37 S. W. 455; 67 S. W. 405; 54 Ark. 195; 79 Am. Dec. 463; 11 L. R. A. 176. Parol evidence is admissible to show the consideration paid for the purpose of affecting damages. 54 Ark. 195; 71 Ark. 497.

A purchaser of land in another's possession takes with notice of equities existing against the title. 76 Ark. 25.

*Arnold & Arnold,* for appellee.

There was a waiver of forfeiture by continuing to accept payments. 87 Ark. 593; 139 Ark. 60; 142 Ark. 300.

Measure of damages is not limited by the benefit of the breach to the party making it. 54 Ark. 195.

WOOD, J. On the 7th day of April, 1921, Frank Mosley and M. C. Wade entered into the following contract:

"I hereby make application for lots 12 and 13 in block 3 in Iron Mountain Addition to Texarkana, Arkansas, at the price of $425, payable $10 per month without interest, except after maturity, and all past due payments to draw 10 per cent. interest. It is agreed that I am to get general warranty deed when I have paid amount due in full. It is understood and agreed that when payments are sixty days behind, this contract is null and void, and all payments made shall be forfeited as rents."

M. C. Wade and B. H. Kuhl were the owners of the lots described, and Wade, in entering into the above contract, was acting for himself and Kuhl. The Iron Mountain Addition was a negro settlement. John W. Welch, a negro, was employed by Wade and Kuhl to sell lots for them and to receive and turn over to them contracts of sale made by him with purchasers of lots, and to collect the first payment. The sales he made were

subject to the approval of Wade and Kuhl. The contracts, when entered into, were to be signed by Wade and returned by Welch to the purchaser.

The above contract was consummated in this manner. Following the printed matter on the sheet were blanks to be filled in, showing the particular date and amount of each payment. All of the payments made under the above contract were made to Welch. Of the amounts paid Welch he turned over to Wade and Kuhl the sum of $317.50. Mosley testified that he made other payments to Welch which were not turned over by him to Wade and Kuhl, and these payments were indorsed on the contract, which brings the total amount of the payments made by Mosley as shown by the indorsements to $412.50. The last of the these indorsements was made July 15, 1919. Mosley made a further payment to Welch as shown by a receipt dated April 24, 1920, of $30, making a total of $442.50 paid as purchase money by Mosley to Welch on the lots under the contract above mentioned.

According to the testimony on behalf of Wade and Kuhl, all the payments under the contract matured in 1915. Mosley never complied with the terms of the contract, but the vendors continued to receive payments under it long after maturity of the contract. In November, 1919, there being still a considerable sum due, the vendors elected to declare the contract of sale void and to treat the payments as rents, and on December 1, 1919, they sold the lots mentioned to John W. Welch, executing to him a warranty deed for the same in which the consideration mentioned was $425. John W. Welch actually paid them the sum of $142.20. Kuhl testified concerning this transaction as follows: "We deeded the lots to John W. Welch, without figuring the interest on the deferred payments, for practically what was due on the contract at the time he purchased. We took his representation for it. He claimed that Mosley had left the country; was down in South Texas or somewhere, and his wife was here in bad circumstances; and we told

him at the time that the contract was void because the time had elapsed, and we declared it now void, and we wanted him to go ahead and sell it to some one else. He begged because I think he said Mosley's wife was his cousin, and asked if I would allow him to preserve the woman's equity in the property by paying the balance and deeding it to him, and let him in turn deed it to her, and I said I would under the circumstances. * * *The sum of $142.20 paid by John W. Welch was the balance due at the time of the contract, without figuring the interest on deferred payments.'' Mosley went into possession of the lots soon after the contract for the purchase thereof was entered into, and made improvements thereon, and has since continuously occupied the same with his family as a home.

On January 16, 1920, the Texarkana Building & Loan Association took a mortgage from John W. Welch on certain properties, including the lots mentioned, to secure a note for $2,525, representing the amount of money which the association had loaned Welch.

This suit was instituted by the Texarkana Building & Loan Association and the trustee in the mortgage against John W. and Mattie Welch, his wife, to foreclose the mortgage. Mosley intervened, and set up that he was the owner of the lots in controversy under his contract of purchase above mentioned, which he alleged had been fully executed on his part by the payment of the purchase money. He alleged that he had no knowledge of the warranty deed executed by Wade and Kuhl to John W. Welch, and that the same was executed by the parties to it by collusion and with a fraudulent intent to defeat him of his rights of title to the property; that the grantees, Welch and wife thereafter executed a mortgage or deed of trust to the Building & Loan Association conveying the lots in controversy with a fraudulent intent also to deprive him of his title; that the association and its trustee, Sanderson, were cognizant of

and charged with notice of Mosley's equity in the lots. He prayed that his title to the property be declared and vested in him.

The Building & Loan Association answered the intervention of Mosley, setting up the deed from Wade and Kuhl to Welch and wife and the mortgage from Welch and wife to it, and asked that the same be foreclosed. It is also alleged that, if Wade and Kuhl breached their contract with Mosley by conveying the lots in controversy to Welch, it was entitled to recover of Wade and Kuhl the sum of $425, the amount of the consideration named in the warranty deed from them to Welch, because it had relied upon said deed in making the loan to Welch. It also set up that Mosley had forfeited his contract with Wade and Kuhl. It prayed that the intervener take nothing; that Wade and Kuhl be made parties, and that, in the event it be adjudged that Mosley was the owner of the lots, it have judgment against Wade and Kuhl for breach of warranty of their deed to Welch in the sum of $425, the consideration named therein. Wade and Kuhl were made parties, and they also answered the intervention of Mosley, denying all of its allegations, set up the contract mentioned, and claimed that Mosley had forfeited his right as purchaser thereunder, and that they had declared such forfeiture and had treated the contract as one of rental, and had declared the same null and void as to Mosley, and had conveyed the property by warranty deed to Welch. They also answered the cross-complaint of the Building & Loan Association and the trustee in the mortgage, denying its allegations, and setting up that they had executed a warranty deed to Welch for the actual consideration of $142.50, and that the sum of $425 mentioned in the deed was not the true consideration. They prayed that the intervention of Mosley be dismissed, and their deed to Welch be confirmed, and for all proper relief.

The above are substantially the issues and the facts upon which the court rendered a decree vesting the title

to the lots mentioned in Mosley and divesting the title out of Welch and wife and out of Wade and Kuhl, and also entered a decree in favor of the Building & Loan Association against Wade and Kuhl for breach of warranty in their deed to Welch in the sum of $425 with interest at 6 per cent. from January 16, 1920, and also foreclosing the mortgage on the other property mentioned therein. It was shown that the Building & Loan Association derived from the mortgage foreclosure the sum of $1,824.35, leaving a balance due it under the decree of $618.40. From the decree of the court Wade and Kuhl and Mrs. Kuhl prayed and were granted an appeal.

Both the appellants, Wade and Kuhl, testified that Welch had authority to sell the lots in controversy and to collect the first payment, but they also testified that he had no authority beyond this. But whether Welch had any actual authority to collect any but the first payment, we need not stop to consider, for it is certain from the preponderance of the evidence in this case, which it is unnecessary to set out and discuss in detail, that Welch had apparent authority to represent the appellants, not only in making the sale and collecting the first payment, but also in collecting subsequent payments. Mosley continued to make the subsequent payments to Welch which the appellants received from him and credited on Mosley's contract of purchase. Indeed, Mosley testified that he paid all the money on the property to Welch, and the appellants do not controvert this, nor do they controvert the fact that they received such payments as were made by Welch and credited the same on Mosley's contract of purchase. By their conduct they clearly held Welch out to Mosley as having authority to receive the payments made by him on his contract of purchase, and they are now estopped from saying that Welch had no such authority.

By the express terms of the contract under review, it became null and void as a purchase con-

tract if Mosley defaulted in the payments for sixty days, and the appellants had the right under the contract after such default to declare the contract of purchase at an end and to treat Mosley thereafter as their tenant and the payments made by him as rents. *Sorrells* v. *Marble,* 142 Ark. 300; *Hanson* v. *Brown,* 139 Ark. 60; *Souter* v. *Witt,* 87 Ark. 593. But the provision forfeiting the right of Mosley as purchaser upon default in making payments as prescribed was one made for the benefit of the appellants which they could waive. See above cases. The facts are that Mosley, immediately upon the execution of the contract, entered into possession of the property and continued in the possession of the same, making improvements, paying the taxes, and holding the same continuously as purchaser and owner and not as a tenant. The appellant testified that Mosley made default after the first payment, but the uncontroverted testimony in the record shows that the appellants never at any time indicated to Mosley that they considered his contract of purchase forfeited and would thereafter treat him as a tenant. On the contrary, they continued, even to the time of making the warranty deed to Welch, to treat Mosley as the purchaser, and the testimony of Kuhl himself shows that their warranty deed was executed to Welch for the consideration of $142.50 upon the representation made by the latter that he should be allowed "to preserve the woman's equity in the property by paying the balance and deeding it to him and let him in turn deed it to her." The issue as to whether the appellants had waived the forfeiture was one depending upon the facts and circumstances developed by the testimony, and, as we view the evidence, the facts are undisputed and show clearly that the appellants had waived their right to treat Mosley as their tenant rather than as the purchaser. See *Souter* v. *Witt* and other cases *supra.*

As between the appellants and Mosley, the next question then is: had Mosley complied with the terms of the contract by making full payment of the purchase money?

This is purely an issue of fact. The original contract of purchase shows indorsements of payments made thereon and the last payment of $10 was indorsed July 15, 1919, which brought the total payments to that date to $412.50 and left a balance due at that time on the principal of $12.50 not including interest. Mosley testified that on April 24, 1920, Welch brought the final report showing that the balance due on the purchase money for the lots was $70, and he presented in connection with it a deed purporting to be signed by Wade and Kuhl to Mosley and wife; that he paid Welch at that time the sum of $30, leaving a balance due of $40; that he was going away and told Welch that he would pay the balance when he returned. When he came back, Welch had gone, and the $40 claimed by Welch as the balance was not paid. But it appears from the indorsements on the original contract of purchase that, exclusive of interest, after the last payment on July 15, 1919, there was only due the sum of $12.50. Therefore, the payments made by Mosley of $30 on April 24, 1920, overpaid the balance due of the purchase money in the sum of $17.50, not including interest. But we are convinced from the testimony of Kuhl himself that the appellants did not intend to, and did not, charge Mosley any interest on the deferred payments of purchase money, for the reason that the testimony of Kuhl shows that the appellants received the sum of $142.50 as a balance of the consideration due by Mosley under the contract. Kuhl expressly stated that the sum of $142.50 was paid by Welch and received by the appellants as the balance due under that contract.

As before stated, the testimony clearly shows that Mosley had paid to Welch, treating him as the agent of the appellants, more than the amount called for as purchase money under the contract, not including interest. It occurs to us that the determination of the appellants to charge Mosley interest on the deferred payments of purchase money was an afterthought and one of the eventualities of this lawsuit. That suit was not in contemplation of the parties at the time Welch, acting for the ap-

pellants, received from Mosley payments which in the aggregate exceeded the balance due by Mosley at the time the last payment of $30 was made. That Welch did not account to his principals for all the money which Mosley paid him is not the fault of Mosley. The appellants, as we have shown, held Welch out to Mosley as having authority to receive these payments, and Mosley was justified in so treating him and in making the payments to him. The court, therefore, was correct in holding that Mosley had paid the full consideration for the lots and in entering a decree investing and quieting title to same in him.

The court entered a decree in favor of the Building and Loan Association against the appellants in the sum of $425, the amount of the consideration named in the warranty deed from appellants to John W. Welch with interest thereon at the rate of six per cent. per annum from the date of the mortgage by Welch to the association. The decree in this respect was correct. When Welch executed the mortgage to the association including the lots in controversy, he presented to the association a warranty deed from appellants to him showing as a consideration for the lots in controversy the sum of $425. On the mortgage debt to the association, Welch is still due the sum of $618.42 with interest and costs of the foreclosure suit. Under the circumstances disclosed by the undisputed testimony, the appellants, as between them and the association, are estopped from claiming that they only received a consideration of $142.50 for their warranty deed to Welch conveying the lots in controversy. Welch represented to Wade and Kuhl that the $142.50 was being paid by him for Mosley on the latter's contract of purchase. The testimony of Kuhl showed that the appellants acted upon this representation and made a deed to Welch expecting him in turn to deed the lots to Mosley. In making up the consideration for the deed, the former payments that had been made by Mosley to Welch were embraced. By deeding the lots directly to Welch, instead of to Mosley, they thus put it in the power of

Welch to defraud the Building and Loan Association by presenting their warranty deed to him. Appellants knew at the time they executed the deed to Welch that Mosley's contract of purchase was outstanding. The appellee did not know this. In a suit for breach of warranty in a deed, as a general rule, parol testimony is admissible to show the true consideration for the purpose of increasing or diminishing the damages. *Barnett* v. *Hughey,* 54 Ark. 195; *Davis* v. *Jernigan,* 71 Ark. 494-97. But the appellants can not avail themselves of that rule against the association, because their conduct in connection with their deed to Welch should estop them from disputing the consideration which they specified.

The covenant of warranty runs with the land, and when the purchaser or covenantee conveys, the covenant passes to his vendee or assignee, and such vendee or assignee, in case of eviction or failure of title, may recover from the original or remote grantor or warrantor the sum which such original grantor or warrantor received from his grantee, with interest thereon from the time of the conveyance to the last vendee or assignee, but he can not recover more than this sum. *Barnett* v. *Hughey, supra; Hollingsworth* v. *Mexia,* 37 S. W. (Tex.) 455; *Lewis* v. *Ross,* 67 Tex. 405. See, also, *Phillips* v. *Reichart,* 17 Ind. 120, 79 Am. Decisions, 463; *Brooks* v. *Black,* 11 L. R. A. (Miss.) 176; *Rogers* v. *Golson,* 31 S. W. (Tex.) 200; see, also, 11 Cyc. 1170.

Since appellants, under the circumstances, must be held to have received from Welch the sum of $425 for the purchase of the land, and are estopped from asserting otherwise, the court was correct in awarding a decree in favor of the appellee for that sum with interest thereon at six per cent. from the date of its mortgage from Welch. The decree being in all things correct, it is affirmed.