Harrison *v.* Mobley.

4-8135                                                  202 S. W. 2d 756

Opinion delivered June 2, 1947.

*W. W. Bandy* and *H. R. Partlow,* for appellant.

*L. V. Rhine, Adrian Coleman* and *Marcus Feitz,* for appellee.

SMITH, J. Appellee, plaintiff below, brought suit in ejectment to recover possession of a tract of land in Greene county, which suit, on motion of appellant, defendant below, was transferred to equity, where upon a trial, possession was awarded as prayed, and from that decree is this appeal.

Through mesne conveyances appellee acquired the State's claim of title to the land based upon a decree confirming the sale of the land to the State for nonpayment of the taxes due thereon for the year 1938. This confirmation decree was rendered November 2, 1942, and within less than a year from the date, appellant filed, pursuant to and in compliance with § 8719, Pope's Digest, as amended by Act 423 of the Acts of 1941, p. 1227, a petition praying that the confirmation decree be set aside, and that he be permitted to redeem the land from the tax sale. Appellant testified that the clerk of the court accorded him this right upon paying the taxes for which the land had sold, and those which had subsequently accrued up to the date of his redemption.

In his petition to redeem, appellant alleged his lack of knowledge of the confirmation proceeding until after

the rendition of the confirmation decree, and he alleged that the tax sale which had been confirmed was invalid for the reason that the clerk of the county court had failed to attach to the record of the 1938 delinquent tax list the certificate required by § 13848, Pope's Digest. That allegation was shown to be true and is not questioned and this omission rendered the tax sale invalid. *Cecil* v. *Tisher,* 206 Ark. 962, 178 S. W. 2d 655; *Devore* v. *Beard,* 208 Ark. 476, 187 S. W. 2d 173.

In the case of *Redfern* v. *Dalton,* 201 Ark. 359, 144 S. W. 2d 713, we said that under the provisions of § 9 of Act 119 of the Acts of 1935, pursuant to which the confirmation decree had been rendered, a landowner might within one year after the rendition of the confirmation decree, make the showing that he had no knowledge of the pendency of the confirmation proceedings, and also that he had meritorious defense against the rendition of the decree, in which event he would have the right to redeem from the tax sale which had been confirmed. And it was there further held that a showing that the sale was invalid for any reason was a meritorious defense within the meaning of this statute.

Appellant has therefore made the requisite showing of a right to redeem, provided he owned or had such an interest in the land as entitled him to question the confirmation decree. This is the controlling question in the case.

It was said in the case of *McMillen* v. *E. Ark. Inv. Co.,* 196 Ark. 367, 117 S. W. 2d 724, quoting from the case of *Woodward* v. *Campbell,* 39 Ark. 580, that: "Statutes providing for redemption from tax sales always receive a liberal construction. Almost any right, either at law or in equity, perfect or inchoate, in possession or in action, or whether in the nature of a charge or incumbrance on the land, amounts to such an ownership as will entitle the party holding it to redeem. Certainly a party claiming the land under an executory contract to purchase it is the owner within the meaning of the act." A number of later cases have reaffirmed that holding.

It is conceded that the original title to the land had been acquired by the New England Securities Company and that this title was conveyed to Securities Savings Circle "D" by the New England Securities Company. This Securities Savings Circle "D" was formed by employees of the New England Company and there was some question as to whether it was a corporation or a partnership. At any rate, this Circle, acting through J. W. Ramsey, Jr., its trustee, entered into a "contract of sale and rent" on October 1, 1927, with appellant, whereby the Circle contracted to sell appellant the land in question for the sum of $600, to be paid in annual installments of $100 each, the first of which was due in 1928. The contract provided that upon failure to pay any installment it should "from the date of such failure be null and void and that any rights acquired under the contract shall cease, and that the premises should revert to and revest in the Circle without any act of reëntry." And further that if occupancy continued after default, rent should be paid at the rate of $45 per year.

Appellant Harrison testified that he took possession of the land upon the execution of this contract, and that he has since continuously been in possession either personally or through someone holding under him. He admitted that he had not made the payments required or any of them, but testified that he had paid the taxes every year until 1938, and the land was sold for nonpayment of the taxes for that year, and that he had paid no taxes subsequent to that date.

After such testimony had been taken, appellee procured a quitclaim deed executed in the name of Savings Circle "D," an unincorporated association, signed and acknowledged by "J. W. Ramsey, Jr., surviving officer" and by "M. S. Gibson, Member of the Board of Directors." This deed was dated October 17, 1944, and its validity is questioned upon the ground that appellant claims also to have a deed from Circle "D" dated August 23, 1938, executed by J. W. Ramsey, Jr., whose acknowledgment of the deed recited that it was executed "under

authority conferred by resolution of its Board of Directors.''

Appellee apparently is relying upon this deed for the purpose of showing that appellant acquired no title under his deed from the Circle as her deed from the Circle represents a title which she acquired after filing this suit. *Percifull* v. *Platt,* 36 Ark. 456; *Dickinson* v. *Thornton,* 65 Ark. 610, 47 S. W. 857.

Appellant paid $100 for his deed, while appellee paid $250 for hers.

The decree from which is this appeal finds that appellant had no title or interest in the land as he had forfeited his rights as purchaser under his original contract with Circle ''D,'' for the reason that he had made none of the payments which his contract required, and that through this failure he forfeited all interest in the land, and it was further found by the court that the deed to appellant from Ramsey and Hall above referred to, conveyed no title for the reason that they had no title to convey, and had executed the deed in the name of the Circle without authority.

We reverse the decree for the reason that we think the court was in error in holding that appellant had no such interest in the land as would entitle him to intervene in the confirmation proceedings and to redeem from that decree. Unquestionably appellant entered into the possession of the land in 1927 as a purchaser, and he paid the taxes thereon until 1938, and he testified that he had remained in possession since the date of his contract. The court correctly held that through failure to make the payments required by the contract of purchase, appellant had forfeited his rights under the contract. But this right to assert a forfeiture was for the benefit of appellant grantor in the contract to sell, and we think the testimony shows that this right was waived. Appellant testified that for several years after taking possession of the land he received many letters from the Circle demanding payment of the purchase money notes, to which he did not respond for the reason that he had no money and for that

reason also he failed to pay the taxes. He testified further that he finally received a letter from the Circle in which he was directed to remain on the land and take care of it. Although the contract of sale gave the Circle the right to demand payment of rent at the rate of $45 per year, no rent was demanded and none was paid.

Considerable correspondence took place between appellee and persons professing to represent the Circle, concerning the purchase of the land from the Circle. We copy from this correspondence certain statements which show that the right to assert the forfeiture was never claimed. In one of these letters it was said that while appellant had not paid all the taxes and none which had recently accrued, he had paid some of them for his own protection, and that "otherwise possession of the property would have been questioned long before this." In another letter it was stated that "by the terms of the contract of sale, we hold Mr. Harrison owes $600 plus 17 years interest, he having paid nothing on the contract during all these years." It was said in this letter that "an assignment of our sale contract with Harrison might be a help to you in getting possession, as it is certain that Harrison would not want to pay the purchase money notes and the interest which had accrued on them." This letter mentioned also the deed to appellant from Circle "D" and referred to it as fraudulent. Finally for a consideration of $250 paid to persons claiming to be lawful representatives of Circle "D" these persons executed a quitclaim deed to appellee, and assigned their interest in the sales contract executed to appellant.

It will be observed that these persons as representatives of Circle "D" asserted and assigned a claim for 17 years interest and not rent. Certainly if appellant owed the interest due under the contract, he had an interest in the contract. It appears to be undisputed that Circle "D" never at any time collected or attempted to collect any rent, but did make demands for payment of principal and interest. Although the Circle had the right under the contract of sale to declare the contract had terminated, it did not do so. On the contrary, the Circle permitted

appellant to remain in possession. Indeed, appellant testified that he was directed to remain in possession and that testimony is not denied. Appellant's testimony is also undisputed that payment of rents was never demanded. The testimony also shows that long after the right to assert a forfeiture had arisen, the Circle made demand not for the payment of rent, but for the principal and interest. In the meanwhile from time to time appellant made various repairs including the building of a fence. These repairs were neither extensive or expensive, but it cannot be said that they were trifling or unsubstantial.

In correspondence between appellee and the persons who executed the deed in the name of the Circle, it was stated that appellant owed $600 "plus 17 years interest" and it was proposed to assign this claim, not for rent, but for principal and interest, and this was done when the deed was executed. To induce appellee to buy the land from the Circle the person who executed the deed wrote appellee: "By the terms of the contract of sale we hold, Mr. Harrison owes $600 plus 17 years interest, he having paid nothing on this contract during all these years. To substantiate your tax title, it would seem that an assignment of our sale contract with Harrison, to you might help in getting possession. With this contract you could make a demand on him for payment of his notes and it is certain that he would not be disposed to pay you the principal and interest due on them. This might be of more value in getting possession than our deed, which under the circumstances can only be a quitclaim; executed by Mr. J. W. Ramsey who is the only surviving officer of the organization holding our title."

The date of this letter was September 15, 1944, and the quitclaim deed and the assignment to appellant's contract were executed a few days later. The suit in ejectment had been filed November 16, 1942.

We conclude, therefore, that the right to claim a forfeiture had been waived inasmuch as the Circle assigned the right to collect the interest due under it. If a forfei-

ture had been claimed, rent would have been due, but not interest. *Hanson* v. *Brown,* 139 Ark. 60, 213 S. W. 12; *Wade* v. *Texarkana B. & L. Assn.,* 150 Ark. 99, 233 S. W. 937.

Appellant's right to intervene may be sustained not only under his contract to purchase, but through his possession of the land under a deed from persons claiming the right to convey the title of Circle "D." The court found this deed invalid as fraudulent, but while it may have been void, it was not fraudulent so far as appellant was concerned. He employed the services of an abstracter of land titles to procure it. This abstracter testified that he had prepared numerous abstracts of title to lands owned by the New England Securities Company and that the records showed that the title of the New England Securities Company had been conveyed to Securities Savings Circle "D," and he was advised that the Savings Circle "D" had divided its assets among its members and was operating under that name both in Kansas City, Missouri, and in Little Rock, and that in the division of its assets the Little Rock branch had been given lands in both Mississippi and Greene counties, in which latter county the land in litigation is located. This witness testified that he purchased the land for appellant from persons operating the Little Rock office, and obtained the deed to appellant above referred to.

Appellant testified that he had possession both under this deed and under the contract of purchase above referred to. The court found, however, that the deed to appellant was executed by persons having no authority to do so, and we cannot say that that finding is contrary to the preponderance of the evidence.

But appellant had a claim of title to the land which he was entitled to have adjudicated, and this claim of title was such an interest in the land as entitled him to intervene in the confirmation proceedings and to redeem from the decree.

The state of the record is, therefore, that appellee now has title to the land acquired after the institution of

this suit in ejectment under her deed from the authorized representatives of Circle "D," but she does not have title under the deed based upon the confirmation decree, the title upon which she based her suit from which decree appellant has redeemed.

The decree will, therefore, be reversed and the cause remanded with directions to adjudge what title appellant now has under his original contract of purchase from Circle "D" and the cause is remanded for that purpose.