## Joe Ann COX v. GULF UNION CORPORATION

73-65                                              499 S.W. 2d 63

### Opinion delivered September 24, 1973

*Acchione & King*, by: *Harold King*, for appellant.

*Haley, Young, Bogard & Gitchel, P.A.*, for appellee.

LYLE BROWN, Justice. Appellee, Gulf Union Corporation, is the record owner of a lot and improvements located at 144 1/2 Forrester Street in North Little Rock. On October 5, 1970, Gulf entered into an option to purchase agreement with Arnold Cox and Joe Ann Cox, husband and wife. Gulf instituted this suit, alleging that appellants had forfeited their option to purchase but nevertheless appellants were interfering with Gulf's exercise of its ownership. Arnold Cox did not answer; in fact he was a mere nominal party to the contract. Joe Ann Cox resisted the complaint, alleging that she orally exercised the option and that Gulf waived the requirement of notice that she was exercising her option, that she was not delinquent in her monthly payments, and (on appeal) that the trial court erred in permitting the trial attorney for Gulf to testify.

We shall summarize the principal provisions of the written option agreement. Mrs. Cox paid $1000 and was

granted possession and an exclusive option for approximately six months (to April 1, 1971) to purchase the property. During the option period she was to make monthly rental payments of $89.22 and during that period the status of landlord and tenant would exist between the parties. It was further provided that the option to purchase was conditioned on the payment of the monthly rentals and written notice by registered mail on or before April 1, 1971, to the effect that the Coxes were exercising the option. If the option was exercised as provided, optionor would convey the property to optionees and take a mortgage for $10,600, less credit for the initial $1000. The agreement stated that in case of default, the relation of landlord and tenant would exist and Gulf could demand possession of the property.

The trial court held that the Coxes failed to comply with the terms of the agreement and lost their option; that following April 1, 1971, the relation of landlord and tenant existed; that pursuant to a notice given by Gulf, the Coxes were obliged to vacate the property as of November 1, 1971; and that Gulf was from that time entitled to exclusive possession and use of the premises.

Gulf introduced the testimony of Louis Mashaw, Clay Hyde, and Attorney David Bogard. Mashaw is the "trouble-shooter" for Gulf in Arkansas and resides in Hot Springs. Gulf is headquartered in Louisiana. Mashaw testified that he met with the Coxes in Mr. Bogard's office on September 28, 1970, and again on October 5; that at the first meeting the draft of the agreement was not satisfactory with the Coxes; that he took a check for $1000 but held it until another and more satisfactory agreement could be drafted and executed by the parties. Mashaw signed the October 5 agreement on behalf of Gulf. He said he took no part in receiving monthly payments.

Witness Clay Hyde, an assistant vice-president of Gulf, resides in Baton Rouge and is in charge of collections. We summarize his essential testimony. The account originated prior to the option to purchase agreement. The Coxes were at one time the owners of the property and they executed a mortgage to Gulf. Shortly after the

mortgage was foreclosed the option to purchase was executed and Gulf left the mortgage account in the IBM machine and used it for entering payments made under the option to purchase. Hyde experienced difficulties with the collection of the agreed monthly rental payments which were to be made during the period of the option. The first payment was due November 1, 1970, and a check was sent dated November 20; the check was not paid because of insufficient funds. The check was eventually honored. During the ensuing period Gulf experienced similar difficulties in getting checks honored. During the months following, Mrs. Cox continued to make monthly payments on a belated basis. By September 1971, she was three months in arrears. Then in early October, Gulf received three payments and they were applied to the July, August and September payments. Those payments made her current through September. Just before she mailed the three payments Mrs. Cox had been sent a letter by Gulf's attorney which instructed her to vacate the premises. That letter was dated September 29, 1971. Later, in October, Gulf received two money orders representing three payments. Those money orders were returned to Mrs. Cox. One more payment was received by Gulf and it was likewise refused. At no time prior to, or after, April 1, 1971, did Mrs. Cox give written notice that she was exercising her option to purchase the property.

On cross-examination Mr. Hyde explained that he could not say when payments were received but could tell the dates they were posted on the IBM machine. He detailed the dates as follows: The first payment was posted the latter part of October 1970; the next one, December 8, covering November; the third one was January 8, for December; on January 8, two payments were run through the machine, covering December and January; the February payment was posted on the 25th; the payment due in March was posted on April 15; the next payment was posted on June 10; and the last credit was made in October, when three payments were sent in for July, August and September. Toward the last of October three payments were made at one time and these funds were returned since Gulf had sent Mrs. Cox notice to vacate the premises.

Mr. Hyde conceded that under date of April 7, 1971, Mrs. Cox was requested to pay the insurance on the property. She responded by sending a check but it was returned "NSF" and was never cashed. Gulf proceeded to pay the premium. He also testified that under date of March 16, 1971, Mrs. Cox was sent four mortgage payment cards; that those cards would last her through the July payment, at which time some more cards would be sent. Then that procedure of sending payment cards was repeated on July 21, 1971. Mr. Hyde explained that those letters and cards went out automatically because the account had not been withdrawn from the IBM machine. A request for payment was also sent out on October 21, 1971. Again, Mr. Hyde said that was because the account was still in the IBM machine. The witness was also confronted with cancelled checks in the amount of the monthly payments, one being dated May 26, 1971, and the other July 26, 1971. Finally, Hyde was asked if he had a conversation with Mrs. Cox in July or August about her paying the property taxes and he replied that he did not so recall.

Over the objection of Mrs. Cox, Gulf's attorney David Bogard was permitted to testify. The objection was on the basis that the rule on the witnesses had been granted at the beginning of the trial. He placed several letters in the record. The first one was dated December 22, 1970. The letter concerned the receipt of NSF checks. Mrs. Cox was reminded that she only held an option to purchase and one of the prerequisites for exercising the option was the prompt payment of monthly installments. The next letter was dated December 30, 1970, which was again in regard to NSF checks, and stated that unless two payments, covering November and January, were in his hands by January 8, 1971, Gulf would reclaim the property. Then on June 1, 1971, Bogard wrote her that since she had not exercised her option to purchase in accordance with the terms of the agreement, Gulf was declaring a landlord-tenant relationship; and that they would expect monthly rental payments in order that she could occupy the premises as a tenant. Then on September 29, 1971, Bogard wrote her that Gulf was terminating the landlord-tenant relationship as of October 1, 1971. Finally, on October 12, 1971, Bogard returned by mail two money

orders recently received. The letter came back undelivered, whereupon Bogard mailed the money orders by certified mail to Mrs. Cox's attorney.

Mrs. Joe Ann Cox was the only witness for herself. She said that in August 1971 she discussed the taxes over the telephone with Mr. Hyde and that he asked her to send payment for the taxes. Before doing so she checked and found they had not been paid. She produced a tax receipt showing redemption for the 1969 and 1970 taxes. The receipt was dated September 1, 1971. She testified that the option to purchase was not the true agreement between the parties. She insisted that she first met with Mashaw and Bogard on September 28, 1970; that the instrument drawn at that time was not satisfactory; that she and Mashaw signed the last page and it was agreed that the other pages would be rewritten; that those pages were rewritten and she was given her copy; that after she got home she read it and stopped payment on the $1000 check; and that Mr. Hyde called her about the check. She explained to Hyde that she was not satisfied with the agreement as drawn; that Hyde assured her a deed would be executed and delivered to her; and that she then sent Gulf another check for $1000.

On cross-examination she insisted that she did not receive any of the letters introduced by Mr. Bogard. She proclaimed ignorance about the contents of the option to purchase and insisted that she did not know what it meant to exercise an option. Mrs. Cox also introduced some records of payments for which Mr. Hyde did not give her credit in his testimony.

We have concluded that Mrs. Cox was entitled to prevail in this action. That is because we think the evidence is clear that Gulf waived the requirement of written notice by April 1. It is also evident that Gulf continuously accepted monthly payments made after the month in which they came into existence. In fact, the contract does not declare an exact day of the month as a deadline for payment. It does not even state that the monthly payments shall be paid during the month in which they are created. There were four significant factors which

occurred after the April 1, deadline which justifiably led Mrs. Cox to believe that Gulf was treating her as a mortgagor:

(1) On April 7, 1971, Mrs. Cox was requested by Gulf's home office to pay the insurance. "Enclosed please find a statement for the insurance coverage on *your* property. Since insurance payments are not included in your *mortgage payments,* please remit $121.00 to Benton & Owens, Inc." (emphasis ours);

(2) In July 1971, Gulf's home office sent Mrs. Cox four payment cards with instructions that one be used each month in making her *mortgage* payments (emphasis ours);

(3) The evidence is clear to us that in August 1971, Mrs. Cox was requested by Gulf to pay the property taxes, which she did; and,

(4) Under date of October 21, 1971, Gulf sent Mrs. Cox this written notice: "Just a friendly reminder your *loan* payment is past due. Please give this your immediate attention". (emphasis ours.)

In the purchase option there was no mention made of payment of taxes and insurance. If Mrs. Cox, at the times she was asked to pay those items, was merely a tenant, the primary obligation for such payments was not on her but on Gulf. See 51C CJS Landlord and Tenant §§ 359 and 374.

It is true that during the period of the four recited transactions Mrs. Cox was being sent letters by Mr. Bogard which, if she received them, (which she says she did not) explained to her that she was merely a tenant. Mrs. Cox testified that in her state of confusion she called Mr. Hyde and he assured her that she would get her deed. Be that as it may, with the home office, by its actions enumerated above, assuring Mrs. Cox that she was a mortgagor rather than a tenant, it would be logical that she would rely on the home office actions rather than those of the attorney in Little Rock.

We think the enumerated acts of Gulf, occurring after April 1, were inconsistent with their right to written notice and any right they claimed to monthly payments being made on a day certain. In *Keith* v. *City of Cave Springs*, 233 Ark. 363, 344 S.W. 2d 591 (1961) is this statement on "waiver":

> Thus, 'waiver' occurs where one in possession of a right, whether conferred by law or contract, with full knowledge of the material facts, does or forbears to do something, the doing of which or the failure or forbearance to do which is inconsistent with the right or his intention to rely upon it.

Then in *Sirmon* v. *Roberts*, 209 Ark. 586, 191 S.W. 2d 824 (1946) we said in essence that one entitled to notice within a designated period cannot complain for want of the notice when, by his actions and conduct, he leads the adverse party to assume there was a waiver.

As to the effect of accepting tardy payments see *Wade* v. *Texarkana Bldg. & Loan Ass'n.*, 150 Ark. 99, 233 S.W. 937 (1921). That case accords with our view.

We do not reach the question of the propriety of Mr. Bogard appearing as a witness when he was an attorney in the case. Assuming that the letters had been admitted through another procedure, the weight of the evidence was still on the side of Mrs. Cox. With respect to participating lawyers testifying, we have fairly recently discussed the subject in *Montgomery* v. *The First Nat'l Bank of Newport*, 246 Ark. 502, 439 S.W. 2d 299; *Old American Life Ins. Co.* v. *Taylor*, 244 Ark. 709, 427 S.W. 2d 23 (1968); and in *Rushton* v. *First Nat'l Bank of Magnolia*, 244 Ark. 503, 426 S.W. 2d 378 (1968).

The cause is reversed and remanded with directions that a decree be entered consistent with our findings.