(No. 12497.—Reversed and remanded.)

MARY E. GRAY, Appellant, vs. A. SHINN et al. Appellees.

*Opinion filed June 16, 1920.*

1. WILLS—*restriction on power of alienation is void whether devise is of a life estate or a fee.* The power of alienation inheres in vested estates devised by will and cannot be restricted by the terms of the will, whether the interest devised is a life estate or fee.

2. SAME—*intention of testator cannot be enforced if inconsistent with rules of law.* While the primary object in construing wills is to ascertain the intention of the testator from a consideration of the terms of the whole will, such intention will be enforced only when it is consistent with established rules of law.

3. SAME—*when a remainder is contingent.* A remainder is contingent when the fulfillment of some condition precedent other than the termination of the preceding estate is necessary before it can become a present estate and when the right of enjoyment is to accrue on an uncertain event.

4. SAME—*until vesting of a contingent remainder the reversion in fee is in heirs of testator.* Until the vesting of a contingent remainder or the determination of the impossibility of its vesting, the reversion in fee is in the heirs of the testator and will open to let in the remainder when the contingency happens.

5. SAME—*contingent remainder must vest during or at termination of particular estate.* A contingent remainder must vest during the continuance of the particular estate supporting it or *eo instanti* upon its termination.

6. SAME—*when life estate is a vested remainder.* An estate is vested in interest when there is a present fixed right of future enjoyment, and a devisee of a life estate who is to come into possession whenever a previous life estate is determined has a vested remainder.

7. SAME—*when conveyances by holder of life estate and reversion in fee effect a merger although another life tenant is in possession.* Conveyances of a life estate and the reversion in fee to the same grantee by the life tenant, who is the only heir of the testator, will effect a merger of the life estate in the fee, although, because of a prior life estate in the testator's wife the grantor is not in possession at the time the conveyances are made. (*Kamerer* v. *Kamerer,* 281 Ill. 587, explained.)

8. SAME—*when termination of a life estate destroys contingent remainders.* Where there has been a merger of a life estate in the

reversion in fee because of conveyances of these interests to the same person, contingent remainders depending upon the death of the grantor without issue will not be affected by the conveyances while a prior life estate in the testator's wife continues to support the remainders, but immediately on the termination of said life estate prior to the happening of the contingency the contingent remainders will be destroyed.

9. SAME—*when sole heir of testator holds life estate and reversion in fee without merger.* As a general rule, contingent remainders supported by a life estate are defeated by descent of the inheritance on the tenant for life, but where a devise of a life estate is followed by contingent remainders there will be no merger in case the reversion in fee descends at the same time to the life tenant directly as sole heir of the testator.

10. SAME—*when contingent remainders are destroyed by descent of fee upon life tenant.* Where contingent remainders are created by a will after the devise of a life estate and the reversion in fee descends to one from whom the life tenant subsequently inherits, there will be a merger and the contingent remainders will be destroyed when the fee descends to the life tenant.

11. SAME—*common law rule of merger and destruction of contingent interests prevails whether proceeding is in law or equity.* The common law rule that when an estate for life and the next vested estate in remainder or reversion meet in the same person the contingent remainders will be destroyed by merger prevails whether the proceeding is in law or equity where there is an express intention to create a merger, but in equity the merger will not take place when it is not for the advantage of the party in whom the interests unite.

12. SAME—*when conveyances by holder of life estate and reversion in fee destroy contingent remainders.* Where the holder of a life estate, who has the reversion in fee as sole heir of the testator, conveys both interests to the same person with the express purpose of creating a merger, the conveyances will destroy all intervening contingent remainders when the grantor's life estate is the only one supporting the contingent remainders.

13. SAME—*a contingent remainder is not an estate at common law.* At common law a contingent remainder is not regarded as an estate but is a mere contingency that may or may not ripen into an estate, and its intervention does not prevent a merger of the particular estate and the remainder in fee.

APPEAL from the Circuit Court of Marshall county; the Hon. T. N. GREEN, Judge, presiding.

CHARLES M. BUCK, (CALVIN RAYBURN, of counsel,) for appellant.

JAY H. MAGOON, guardian *ad litem,* (BARNES, MAGOON & BLACK, of counsel,) for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Appellant, Mary E. Gray, filed a bill in chancery to the May term, 1918, of the circuit court of Marshall county to remove certain clouds and quiet the title in her in fee simple to certain real estate in said county and to construe the will of William H. Gray, deceased. The court sustained exceptions to the master in chancery's report finding in favor of appellant and recommending a decree for her in accordance with the prayer of the bill and dismissed the bill for want of equity.

The facts in this case are not in dispute. The testator, William H. Gray, was in his lifetime the owner in fee simple of two farms in Marshall county, Illinois,—one of 200 acres and the other of 160 acres,—and also of a farm of 240 acres in White county, Indiana. He died seized thereof February 8, 1913, leaving him surviving his widow, Julia Rogers Gray, and his grandson and sole heir, William Allen Gray. He had been previously married to Willmina Augusta Kercher, who died many years before his death. Of that marriage one child, John Robert Gray, was born, and he died before his father's death, leaving him surviving appellant as his widow and William Allen Gray as his only son and heir-at-law. Julia Rogers Gray, as devisee and life tenant, went into possession of the two farms in Marshall county and remained in possession thereof until her death, January 12, 1918. Appellant went into possession of the same immediately after the death of Julia Rogers Gray, and remained in possession thereof and collected rents from the same since that date under claim of ownership by

virtue of the five deeds hereinafter mentioned. The testator's will was duly probated in White county, Indiana, and later an authenticated copy thereof was duly filed and recorded in Marshall county, Illinois. By his will, after providing for the payment of his debts and funeral expenses and making provisions for a homestead for his widow and providing that the devises to his widow should be in lieu of her rights as widow, he disposed of the real estate in Marshall county by a number of clauses in his will. By item 4 thereof he devised to Julia Rogers Gray, his widow, all of said land during her natural life. By item 7, upon the death of his widow he devised all of said land to his grandson, William Allen Gray, for and during his natural life. By item 8 he provided that his grandson should not convey, transfer or incumber his life estate above devised during the period of his natural life. Upon the death of the grandson, William Allen Gray, if he die leaving a child or children or descendants of such him surviving, by item 9 the devise was to such child or children or their lineal descendants, if any such there be, per capita, in fee simple, subject to a one-third interest in the rents and profits to the widow of William Allen Gray during her life or so long as she remains unmarried. By items 10 to 13, inclusive, should said grandson die leaving no child or children or descendants of such him surviving, then and in that event the testator devised the 200-acre farm in Marshall county to the trustees, or their successors in office, of the First Methodist Episcopal Church of LaRose, Marshall county, and the 160-acre farm in said county to the trustees of the First Methodist Episcopal Church of Rutland, LaSalle county, Illinois, or their successors in office, and both devises are in trust for the support of the pastor, repairs on church property, incidentals and benevolences, as may be unanimously agreed upon by the pastor in charge, board of stewards and trustees, respectively, of said churches. By item 16 it is recited that the contingent devises to the re-

spective churches aforesaid are upon the conditions that the trustees of said churches shall take proper care of said property, pay the taxes when due, keep the buildings painted, insured and in repair. Failure so to do will constitute a forfeiture, and in such case he devises the property to Eva Coutlet and Eugene Clark, share and share alike, in fee simple, or in case of the death of either or both, then to the children of each or either, share and share alike. The Indiana land is not in question in this suit. The bill in this case was filed while appellant was in possession of all the land in question and collecting rents.

On December 10, 1913, while the testator's widow, Julia Rogers Gray, as life tenant, was in possession of said land, two deeds, referred to in the record as exhibits B and C, were executed by William Allen Gray to the appellant, his mother, to the 200-acre farm. On the same day he executed two other deeds to the appellant to the 160-acre farm, referred to as exhibits D and E. They are all, in form, grant, bargain and sale deeds, reciting the provisions of the will in effect, and exhibits B and D further recite that the intention thereof is to convey the reversion in fee in the land vested in him by descent and no other interest. Exhibits C and E also recite the previous conveyance of the reversion in fee to the grantee and the intention of the grantor to convey his life estate in the land and no other interest, and for the purpose of extinguishing and merging his life estate in the reversion in fee and of destroying all contingent future interests aforesaid. The expressed consideration in each deed is one dollar and other valuable consideration. William Allen Gray was then a bachelor, but on April 16, 1917, he was married to appellee Marvel May Sindlinger Gray, and of that marriage appellee John Robert Gray was born April 26, 1918. Without filing a supplemental bill appellant introduced in evidence exhibit X, a deed from William Allen Gray to appellant for his life estate, executed July 6, 1918, reciting his former conveyances

293 – 37

and the fact that a question had arisen as to the effect of said former conveyances, and that it is made for the purpose of confirming the title to the life estate of the grantor in the appellant and so there might be no question of the merger aforesaid. The 200-acre farm was of the value of $175 per acre and the 160-acre farm was of the value of $250 per acre.

The clause in the will which attempts to restrict the grandson, William Allen Gray, from conveying or incumbering his life estate at any time during his life is void, as a restriction on the power of alienation is repugnant to the estate devised. The power of alienation during the time a devisee holds the estate devised is inherent and cannot be restricted by the terms of the will. This is so whether the interest devised is a life estate or a fee, under the holdings of this court. (*Henderson* v. *Harness,* 176 Ill. 302; *Davis* v. *Hutchinson,* 282 id. 523.) While the primary rule in construing wills is to ascertain the intention of the testator from a consideration of the terms of the whole will, such intention will be enforced only when it is consistent with established rules of law.

The devises over after the life estate devised to William Allen Gray, the sole heir, were of contingent remainders. This is practically conceded by appellees. A remainder is contingent if, in order for it to become a present estate, the fulfillment of some condition precedent, other than the determination of the preceding estate, is necessary. (Gray's Rule Against Perpetuities, sec. 9.) An estate is contingent when a right of enjoyment is to accrue on an event which is dubious and uncertain. (1 Fearne on Remainders, 2; *Smith* v. *Chester,* 272 Ill. 428.) Until the vesting of a contingent remainder or the determination of the impossibility of its vesting, the reversion in fee is in the heirs of the testator. (*Belding* v. *Parsons,* 258 Ill. 422; *Bond* v. *Moore,* 236 id. 576.) A contingent remainder must vest during the continuance of the particular estate supporting

it or *eo instanti* upon its termination. *Belding* v. *Parsons, supra.*

The estate devised to William Allen Gray was a vested life estate limited to take effect in the future. An estate is vested in interest when there is a present fixed right of future enjoyment. (1 Fearne on Remainders, 2.) The gift in this case was to Julia Rogers Gray as first life tenant. On her death the gift was to William Allen Gray for life, which is a devise to him of a vested life estate. His life estate was ready to come into possession whenever and however the widow's life estate was determined, and it was therefore a vested remainder. (Kales on Future Interests, sec. 94a; *Scofield* v. *Olcott*, 120 Ill. 362.) The right and power of alienation inheres in vested estates. *Henderson* v. *Harness, supra; Friedman* v. *Friedman*, 283 Ill. 383.

There being no devise of the remainder in fee by the testator's will a partial intestacy resulted, and the grandson, William Allen Gray, being the sole heir of the testator, took the fee in reversion until the vesting of some one of the contingent remainders created by the will. Had one of the contingencies happened, the reversion vested in the grandson would have opened up to let in such contingent remainder when the contingency happened. (*Matthews* v. *Andrews*, 290 Ill. 103.) But all of the contingent remainders were destroyed by the death of the first life tenant, Julia Rogers Gray, and by the deeds of William Allen Gray to appellant, his mother. By his two deeds known as exhibits B and D he conveyed to appellant, beyond question, the reversion in fee that came to him by descent from his father. He also conveyed by his deeds referred to as exhibits C and E his life estate to appellant, and the two estates,—the life estate and the reversion in fee,—thus came together and were vested in one and the same person and in her own right. There was no intervening estate or devise after the grandson's life estate except the contingent remainders aforesaid. Said deeds expressly provided that

they were made with the intention of merging the life estate of the grandson with the remainder in fee simple, also held by him, and for the purpose of destroying the intervening contingent remainders. These conveyances, made with the expressed intention aforesaid, did not have the effect to destroy the contingent remainders aforesaid, because the contingent remainders were supported by the life estate of the widow, Julia Rogers Gray. Every contingent remainder must necessarily be supported by a life estate with the right of possession in the life tenant. The effect of the conveyances by the grandson was simply to merge his life estate in the remainder in fee simple. This left still remaining the life estate of the widow, immediately followed by the contingent remainders, with the remainder in fee simple in appellant. The contingent interests were not yet destroyed, but they were absolutely destroyed on the death of the widow, as her life estate terminated before any of the contingencies happened to make effective any one of the contingent remainders, and there was no other life estate left to support the contingent remainders.

It is contended by appellees that this proceeding being in a court of equity, the grandson cannot be held to have the right to merge his life estate in the vested remainder in fee by the conveying of the life estate and the remainder in fee to appellant, as that would have the effect to allow him to destroy the plain intent of the testator, while he himself was the owner of both the life estate and the remainder in fee. It is the general rule that contingent remainders supported by a life estate are defeated or destroyed by the descent of the inheritance on the tenant for life. Under the law of wills, if a life estate is devised by the testator to any life tenant, and the devise is followed by contingent remainders, there will be no merger in case the remainder in fee descends to the life tenant directly as heir-at-law, and he is invested therewith at the same time he is invested with the life estate by the will. If, however,

the descent is not immediate to the life tenant but descends
to another party and at the death of that other party the
fee then descends to the life tenant, there will be a merger
and the contingent remainders will be destroyed. (4 Kent's
Com. 254.) There is no rule, however, in this State, in
equity or at law, that prevents the voluntary destruction of
contingent remainders by the conveyance of the life tenant
to a third party for the express purpose of destroying the
contingent remainders or for the express purpose of effect-
ing a merger of a life estate with a reversion in fee simple.
The common law rule of merger prevails in this State, and
whether the proceeding is at law or in equity the common
law rule is enforced. This rule, simply stated, is, that when
an estate for life and the next vested estate in remainder
or reversion meet in the same person, notwithstanding in-
tervening contingent remainders, the particular estate will
merge in the reversion or remainder and the contingent
remainders will be destroyed. This rule is qualified where
the creation of a particular estate and the remainder or re-
version occur at the same time and by the same instrument,
or where the particular estate is devised by will and the
life tenant takes the vested remainder or reversion by de-
scent at the same time that he takes under the will, as
aforesaid. However, the life tenant under all these ex-
ceptions effectually creates a merger when he conveys both
estates to a third party with the expressed purpose of creat-
ing a merger, and such a conveyance will destroy all in-
tervening contingent remainders when his life estate is the
only one supporting the contingent remainders. This rule
is recognized in *Bond* v. *Moore,* 236 Ill. 576, which was
a proceeding under the Torrens act. It is also expressly
recognized and followed in the case of *Messer* v. *Baldwin,*
262 Ill. 48, a suit in chancery. The same principles are
also recognized by the following cases in this State, which
were proceedings by bills in chancery: *Belding* v. *Parsons,*
258 Ill. 422; *Benson* v. *Tanner,* 276 id. 594; *Barr* v. *Gard-*

*ner,* 259 id. 256. In the last case cited, a life tenant under the will and a devisee of the remainder under the will were allowed to destroy the intervening contingent remainders by their deeds to a third party under a bill for partition. So it is clearly seen that in this State the rules of merger apply and are enforced in suits in chancery just the same as in suits at law. In fact, it is one of the maxims in equity that equity follows the law. The merger in this case was created before this suit was brought, and the appellant was legally entitled to insist upon the law of merger. There are other States that hold different doctrines. Merger of estates is for the benefit of him in whom the two interests unite, and while it will never take place when it is against his interests in a case in chancery, yet when it is for his advantage and the intent is expressly stated in the instrument then there is no reason why a merger should not take place where the common law rule of merger is recognized. (*Wallace* v. *Blair,* 1 Grant's Cas. 75.) Merger was expressly provided for by the deeds in the instant case, and it is to the advantage of appellant, the grantee, that the estates merge.

Appellees seem to contend that the case of *Kamerer* v. *Kamerer,* 281 Ill. 587, is an authority for the proposition that there can be no merger of a life estate and a vested remainder in fee unless the life estate is in possession. This is a misapprehension of the decision in that case. It is merely stated, in substance, in that case that the reversion of Andrew Kamerer, deceased, is of no value unless there should be a merger of the reversion in fee with a present estate in possession and a consequent destruction of contingent interests. That is a true statement in that case, but it is very far from a holding that a merger cannot take place unless the particular estate is in possession. The law of merger is fully and completely stated by Blackstone in this language: "Whenever a greater estate and a less coincide and meet in one and the same person without any intermediate estate, the less is immediately annihilated, or,

in the law phrase, it is said to be merged,—that is, sunk or drowned in the greater. Thus, if there be a tenant for years and the reversion in fee simple descends to or is purchased by him, the term of years is merged in the inheritance and shall never exist any more." (2 Blackstone's Com. 177.) A contingent remainder was not regarded at common law as an estate. It was a mere contingency that might or might not ripen into an estate, and for that reason its intervention did not prevent a merger of the particular estate and remainder.

Under the common law rule that a remainder must vest in the grantee or devisee during the continuance of the particular estate supporting it, or *eo instanti* that it determines, we must hold that the contingent remainders aforesaid were all destroyed on the death of Julia Rogers Gray. When this suit was brought appellant had possession of the land rightfully, and she also had in her own right the title to the life estate of her son, William Allen Gray, merged in the reversion in fee. The first life estate had ended by death. There is, therefore, no theory under the law of this State by which it may be successfully contended that the contingent remainders were not destroyed by the death of the particular life tenant in possession. When appellant obtained possession she had acquired both the life estate of the grandson and the reversion in fee, and the whole title being in her in her own right, a merger was the necessary consequence. There was, therefore, no necessity for the execution of exhibit X to accomplish a merger that had already been accomplished. This court has plainly indicated the only way by which a testator can prevent his will from being thus defeated in the absence of a statute. (*Lewin* v. *Bell,* 285 Ill. 227.) This case, like all others that we have decided before it, necessarily defeats the intention of the testator, and it will continue to be the case as long as the common law rule is in force. It is, however, the undoubted law of this State, whether it be by a proceeding at law or in chancery.

Under the proofs in this record appellant is the owner in fee simple of the premises in question and in possession of the same. She was entitled to a decree construing the will of the testator and quieting her title in fee by removing clouds therefrom, the existence of which is unquestioned, as prayed by her bill.

The decree of the circuit court is therefore reversed and the cause remanded, with directions to enter such a decree for appellant. *Reversed and remanded, with directions.*