(No. 26730.—

J. M. LYDICK *et al.*, Appellants, *vs.* EDGAR TATE *et al.*, Appellees.

*Opinion filed September 25, 1942—Rehearing denied Nov. 12, 1942.*

618

JOHN LYNCH, and A. J. McMAHAN, (DON O. RUSSELL, and HENRY J. MUELLER, of counsel,) for appellants.

GREEN & PALMER, WALTER E. WILL, KIGER & DILSAVER, and JOHN L. KAGY, (HENRY I. GREEN, ORIS BARTH, ENOS L. PHILLIPS, and JEWELL I. DILSAVER, of counsel,) for appellees.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Marion county. On motion of appellees the complaint, filed by appellants, was dismissed for want of equity. By the complaint appellants sought to establish title to certain interests in three separate tracts of real estate, under the last will and testament of Martin Adams, deceased. Martin Adams died on March 21, 1912, a resident of Marion county. He left a last will and testament duly executed by him on April 8, 1902. He was 82 years of age at the time he executed his will. He left him surviving, John Adams, his son, and Emma J. Klein (referred to in the will as Emma Adams,) and Ellen S. Meisenheimer (named

in the will as Ellen Tate,) his daughters, as his only heirs-at-law.

His will was duly admitted to probate by the county court of Marion county and his estate was finally settled and the executor discharged, on Sepetember 14, 1914. His daughter Ellen S. Meisenheimer had been married twice prior to the date the will was executed. By her first husband, William Lydick, she had one son, Asa Lydick. By her second husband, William Tate, she had two sons, Samuel N. Tate and Edgar Tate.

Ellen Meisenheimer survived her father, Martin Adams. She died testate on April 16, 1936. By her will, duly admitted to probate by the county court of Marion county, she devised all of her property to her sons, Samuel N. Tate and Edgar Tate. The interests in the property claimed by all parties to this suit are based upon the last will and testament of Martin Adams, deceased. By the third paragraph of his will the testator gave all his property to his wife for her life. Due to the fact that she did not survive her husband, this estate lapsed and need not be further noticed in this opinion.

There is involved in this case the title to three separate tracts of land. In the complaint, three separate causes of action are set out, in separate counts, one relating to each tract of land involved. It will be necessary to discuss more in detail the relationship of the parties, and the claims made, in connection with the different paragraphs of the will on which the titles claimed are based. The titles depend upon the construction of three separate paragraphs in the will. It will be necessary to first determine the intention of the testator, as expressed in his will, and then apply the applicable rules of law to the intention so expressed.

The first paragraph of the will involved, and which constitutes the foundation for the claims made in the first cause of action, as stated in the first count, is paragraph 6. This paragraph reads as follows:

"Sixth: I give, devise and bequeath to Ellen Tate my beloved daughter during her widowhood, (here describing certain real estate) to have and to hold for and during her natural life, and at her death or remarriage the said land shall descend to her heirs."

On the date the will was executed, April 8, 1902, Ellen Tate, the devisee named in said paragraph, was a widow. She then had three living children, viz: Asa Lydick, Samuel N. Tate and Edgar Tate. Prior to the death of the testator on March 21, 1912, she had married Meisenheimer. She was not a widow at the time of the death of the testator. Her three sons, above named, were living at the date of the testator's death. No other children were born to her. Appellants Lydick, Roggy and Moore are the children and heirs-at-law of Asa Lydick, the deceased son of Ellen Meisenheimer, by her first marriage. They claim a one-third interest in the 25-acre tract described in said paragraph of the will. Appellants Duncan and Baird claim under an oil and gas lease executed by appellants Lydick, Roggy and Moore. Their interests depend upon the title of their lessors. The defendants in the suit are Samuel N. Tate and Edgar Tate, together with their wives and certain of their lessees.

It is contended by the appellants above named, who are the complainants in count one of the complaint, that by this paragraph of the will the daughter, Ellen Tate, was given a determinable life estate subject to be defeated upon her remarriage, either prior or subsequent to the death of Martin Adams, the testator; that her marriage to Meisenheimer prior to the death of the testator, terminated her life estate, or prevented it from ever becoming vested. It is further contended that by this paragraph of the will, the testator devised the remainder in the real estate described in that paragraph, on the death or remarriage of Ellen Tate, to her three children then living. It is further contended that the life estate in Ellen Tate, having failed because of the happening of the contingency

which was to terminate it, before the estate vested, her three sons, living at the death of the testator, took title to the property, in fee simple, upon his death. The further contention is made that the testator, by the use of the word "heirs" in this paragraph of the will, referred to the children of Ellen, and not to her heirs, generally.

Appellees contend that, by this paragraph of the will, the testator intended to give to his daughter Ellen, a life estate with remainder over to her heirs, and that under the rule in *Shelley's case*, the fee simple title vested in Ellen, the first taker, at the death of the testator.

In the second cause of action stated in the second count, the plaintiffs are the same as in the first count. The cause of action alleged in this count is based upon the seventh paragraph of the will.

Under this count, appellants Lydick, Roggy and Moore, claim a one-ninth undivided interest in the real estate described in that paragraph of the will. The same contentions are made with reference to the chain of title as are made in the first cause of action, stated in the first count. In so far as the devise to the daughter Ellen in this paragraph of the will is concerned, it differs from the sixth paragraph of the will only in that there is no restriction on her remarriage in the seventh paragraph. It is claimed by appellants by this count, that the daughter, Ellen Tate, took a life estate in the one-third undivided interest in the tract of land there described, with remainder over to her children. From this premise the same contention is made that the title to a one-third undivided interest vested in the three sons of Ellen Tate, living at the date of her death.

As to this paragraph of the will, appellees make the same contention made by them as to the sixth paragraph of the will, *viz*: that it was the intention of the testator, by this paragraph of his will, to devise a life estate to his daughter Ellen, with remainder over to her children; that he used the word "heirs" in its technical or general sense and, under the rule in *Shelley's case* the limitation over

was inoperative and that fee simple title vested in the daughter Ellen, the first taker.

The third cause of action stated in the third count of the complaint, presents a similar factual situation. In that count, all of the surviving children of John Adams, deceased, except one son, Everett Adams, are named as plaintiffs. Also named as plaintiffs in this count are the widow and all of the surviving children of a deceased son of John Adams, except Archie Lloyd Adams. Appellee Everett Adams, one of the sons of John Adams, and appellee Archie Lloyd Adams, the son of a deceased son of John Adams, are named as defendants. The Texas Company is named in this count as a defendant because it is lessee in an oil and gas lease executed by some of appellees.

The cause of action stated in this count involves a construction of the fourth paragraph of the last will and testament of Martin Adams deceased.

In this count, appellants claim that the devise to John Adams by this paragraph of the will, was a life estate with remainder over, at his death, to his children. It is claimed in this connection by appellees, that the language in this paragraph, "to have and hold during his natural life and at his death then it shall descend to his heirs" should be construed to mean that at the death of John Adams the land should go to his children. Under this contention, it is insisted that at the death of John Adams, subsequent to the death of the testator, Martin Adams, title to the land vested in the five children of John Adams, living at that time. It is claimed that the three plaintiffs, who were children of John Adams, deceased, each took a one-fifth interest in the property; that the widow of the deceased son of John Adams took a one-fifteenth interest, and each of his three children took a one-thirtieth interest in the land described in this paragraph of the will.

As to this cause of action, appellees make the same contentions they make in defense of the causes of action set out in counts one and two. They assert that Martin

Adams, the testator, by this paragraph of his last will and testament, intended to vest a life estate in his son John Adams, with remainder over to his heirs, at his death; that under the rule in *Shelley's case* the limitation over was inoperative and that upon the death of the testator the fee simple title vested in John Adams, the ancestor, who was the first taker.

In order that the questions involved in the first cause of action, stated in the first count of the complaint, may be considered in the light of the facts alleged in that count, it will be necessary in this opinion to consider that count separate from the other two counts. This is necessary, although the same rules of law, in the main, are applicable to each of the separate causes of action, stated in the three counts.

The first question to be determined, is the intention expressed by the testator in the language used by him in the sixth paragraph of his will. It is fundamental that in determining whether the rule in *Shelley's case* applies, the language of the will must be first construed by the application of ordinary rules of construction. Such construction cannot be determined from any consideration of the rule in *Shelley's case*. In determining the intention of the testator, the rule in *Shelley's case* must be wholly disregarded. (*Meeker* v. *Steepleton,* 309 Ill. 337; *Hollenbaugh* v. *Smith,* 296 id. 558; *Peacock* v. *McCluskey,* 296 id. 87.) That rule cannot properly influence the construction of the will or be given consideration in determining the intention of the testator. It is a rule of property and not of construction. (*Havely* v. *Comerford,* 343 Ill. 90; *Gruner* v. *Rice,* 333 id. 112; *Deemer* v. *Kessinger,* 206 id. 57.) Whether the rule in *Shelley's case* applies, can only be determined, after the intention of the testator has been properly ascertained in accordance with settled rules of interpretation.

With these well-known rules in mind, the intention of the testator must be ascertained from the language of the

will itself. Whether the estate given to Ellen by this paragraph of the will be designated as a determinable life estate, as argued by appellants, or as a life estate subject to a condition, is of no importance.

It should be more properly designated as a devise upon a conditional limitation. (*Green* v. *Old People's Home,* 269 Ill. 134.) However this devise may be technically designated, the decisive question here is the effect of the happening of the contingency upon which the estate devised to Ellen was to terminate, prior to the death of the testator.

In construing this paragraph of the will for the purpose of determining the character of the estate intended by the testator to be given to his daughter Ellen, we may look only to the language of the will, which must be considered in the light of the circumstances surrounding the testator at the time of its execution. *Knight* v. *Knight,* 367 Ill. 646; *Rettig* v. *Zander,* 364 id. 112; *Norton* v. *Jordan,* 360 id. 419; *Dahmer* v. *Wensler,* 350 id. 23; *Moffet* v. *Cash,* 346 id. 287.

The parties here are in practical agreement that the testator intended, by this paragraph of his will, to devise to his daughter Ellen, a life estate, which should terminate upon her remarriage. This would clearly constitute a devise of a life estate to her. (*Kern* v. *Kern,* 293 Ill. 238; *Cowman* v. *Glos,* 255 id. 377; *Kratz* v. *Kratz,* 189 id. 276; *Rose* v. *Hale,* 185 id. 378; *Green* v. *Hewitt,* 97 id. 113; *Burnett* v. *Lester,* 53 id. 325; *Batterton* v. *Yoakum,* 17 id. 288.) The only point on which there is a serious difference, is the effect of the happening of the contingency on which the estate devised would terminate, prior to the death of the testator. Appellants contend that this prevented the life estate from ever vesting and, consequently, upon the death of the testator, the whole title vested in the remaindermen, as of that date. While they concede that the testator, by this paragraph of the will, intended to devise a

life estate to his daughter Ellen, with remainder over to her heirs, they insist that upon the failure of the life estate, because the contingency occurred during the lifetime of the testator, the remainder is the only estate which ever vested or became effective. It is argued that the situation is no different than it would have been if no life estate had been created at all; that the life estate, having never become vested, the rule in *Shelley's case* cannot apply. It is true that in order to come within the rule, the limitation over must be preceded by a freehold estate in the ancestor.

The field in which the rule in *Shelley's case* operates is well defined. It has been in full force in this State since *Baker v. Scott,* 62 Ill. 86. It is a settled rule of property, applicable in all cases coming within its scope. It is definite in its application and venerable for its antiquity. The rule is that if an estate of freehold be limited to "A" with remainder to his heirs, general or special, the remainder, although importing an independent gift to the heirs, as original takers, shall confer the inheritance on "A," the ancestor. (*Kaup* v. *Weathers,* 302 Ill. 569; *Johnson* v. *Buck,* 220 id. 226; *Baker* v. *Scott, supra; Peacock* v. *McCluskey, supra.*) The limitation to the heirs must be to the heirs of a person taking a particular estate of freehold, but. if it is confined to such heirs, then it is immaterial whether there be several ancestors taking the particular estate or only one; or whether their estates be several, provided they all take, or joint; or whether the remainder be to the heirs of all or only of some or one of such ancestors; or whether the estate to the ancestor be such as may possibly determine in the lifetime of such ancestor, or not. Whenever the ancestor takes any estate of freehold, whether for his own life or for the life of another, or whether it be of such a nature that it may determine in his lifetime, or not, and there is afterwards, in the same conveyance, a limitation to his heirs, such limi-

tation vests immediately in the ancestor. (*Bails* v. *Davis*, 241 Ill. 536.) This merger in the ancestor is not a necessary result of the operation of the rule in *Shelley's case*. It operates from another independent rule of law in regard to separate estates, which, in any manner, become vested in one person.

It is well settled that where the will or other conveyance creates an estate within the rule in *Shelley's case*, the word "heirs" is one of limitation and no intention of the grantor, however clearly expressed, can change it into a word of purchase. *Winter* v. *Dibble*, 251 Ill. 200; *Davis* v. *Sturgeon*, 198 id. 520; *Vangieson* v. *Henderson*, 150 id. 119; *Fowler* v. *Black*, 136 id. 363; *Carpenter* v. *Van Olinder*, 127 id. 42; *Havely* v. *Comerford, supra.*

Under this rule if the testator, by the language used in his will, intended to devise a life estate to his daughter Ellen, with remainder over to her heirs, the rule in *Shelley's case* applies. That the life estate devised was subject to the limitation that it should.terminate upon her remarriage, did not change the character of the estate devised. It was still a life estate. By the same instrument he devised the remainder over to her heirs. By the language used, this devise clearly falls within the rule in *Shelley's case*, unless the failure of the life estate, by the happening of the contingency which terminated it, during the life of the testator, renders that rule inoperative. So far as the cases cited by counsel show, and our own independent investigation discloses, the question of the effect of the happening of the contingency which terminates the life estate during the life of the testator, has not been directly considered in the published decisions of the courts of last resort in this or any other country. The question, however, cannot be said to be without precedent, both in the reason and logic found in many decisions of this court.

The question is: Did the testator intend to devise a life estate to his daughter Ellen with remainder over to her heirs, so as to bring the devise within the rule in

*Shelley's case?* Aside from the question of whether he meant "children" by the use of the word "heirs," which we will notice later in the opinion, no one contends or has even suggested that it was not the intention of the testator, at the time the will was executed, to give to his daughter Ellen a life estate, with remainder over to her heirs. If that was his intention, at that time, nothing which thereafter happened would, in any way, affect or change that intention. It is true that for the purpose of ascertaining the effect and operation of a will, it speaks from the death of the testator. (*Levings* v. *Wood,* 339 Ill. 11; *Thompson* v. *Thompson Carnation Co.,* 279 id. 54.) Nevertheless, for the purpose of ascertaining the testator's intention, a will must necessarily speak from the date of its execution. As said by Mr. Justice McSurely in *Heckler* v. *Young,* 264 Ill. App. 34, quoting from *In re Mandelle's Estate,* 252 Mich. 375, "It is more accurate to say that a will is not operative until the death of the maker and then speaks the intention of the maker at the time of its execution." This court denied *certiorari* in that case. While this does not necessarily mean that this court approved all the language in the opinion of the Appellate Court, it cannot be assumed that this court disagreed with a principle of such far-reaching importance. Moreover, the same principles have been applied by this court in *O'Hare* v. *Johnston,* 273 Ill. 458; *Peet* v. *Peet,* 229 id. 341, and in many other cases.

The rule making a will speak as though executed immediately before the death of the testator, relates to the effect and operation of the instrument and not to its construction. *Henderson* v. *Henderson,* 77 N. J. Eq. 317; *Gray* v. *Hattersley,* 50 N. J. Eq. 206; 69 Corpus Juris, p. 128, sec. 1168.

No one would seriously contend that the intention of the testator, immediately preceding his death, should be ascertained, in construing a will. He is presumed to anticipate and intend that all provisions of his will will

become effective and operative upon his death. For this reason courts have universally held that declarations of a testator or proof of conditions existing after the execution of the will, can not be admitted as bearing on its construction. A testator is to be presumed to calculate that all the provisions in his will will take effect upon his death, rather than that some of such provisions shall not become effective. (*Strain* v. *Sweeny,* 163 Ill. 603.) Under this rule, the testator here must be presumed to have anticipated and intended that his daughter Ellen would be living at the time of his death and would not remarry prior to that time. It would be ridiculous to assume that Martin Adams contemplated that his daughter Ellen would remarry, during his lifetime, and that the life estate he devised to her would never vest, or become effective. He could not have had that in mind when he executed the will. Such an assumption would violate all rules of reason and logic.

This demonstrates, conclusively, the reason for the rule that the intention of the testator must be determined as of the date the will was executed. We cannot escape the conclusion that the testator, at the time he executed his will, fully intended to give to his daughter Ellen a life estate, and equally contemplated that she would survive him and not remarry prior to his death. From his intention, at the time he executed his will, as clearly expressed by the language used, he devised a life estate to Ellen with remainder over to her heirs. It makes no difference what happened thereafter. His intention is to be ascertained as of the date the will was executed. Such intention cannot be determined upon the happening, or failure to happen, of some future contingency. The case is no different than it would have been had no contingency of Ellen's remarriage been written in the will.

No case has been cited, and we have found none, which holds that the precedent life estate necessary to bring a devise within the rule in *Shelley's case* must actually become vested in the first taker. The fundamental basis of

the rule is that the freehold in the ancestor merges with the limitation over to the heirs and the whole title simultaneously vests in the ancestor. As the result of the operation of the rule, the life estate never vests in the ancestor, as a separate and independent estate. It is destroyed simultaneously with its vesting, by its merger with the greater estate. In no case within the rule in *Shelley's case,* does the life estate have any separate or independent existence unless there is an intermediate estate, because of such simultaneous merger with the greater estate. The application of the rule does not, therefore, depend upon the actual vesting of the life estate. It depends only upon the intention of the testator, ascertained as of the time of the execution of the will, and expressed in the language used. In this case the testator fully intended, at the time he executed his will, to vest a life estate in his daughter Ellen, with remainder over to her heirs. The fact that it was subject to a conditional limitation, did not prevent it from being a freehold estate. This meets all the conditions and requirements necessary to the application of the rule in *Shelley's case,* unless it be found from the language of the will, that the testator intended to limit the estate, in remainder, to the children of his daughter Ellen, and did not intend that it should descend to her heirs from generation to generation in accordance with the well-defined meaning of the word "heirs."

The cases of *Elliott* v. *Brintlinger,* 376 Ill. 147; *Danz* v. *Danz,* 373 id. 482; *Jackson* v. *Knapp,* 297 id. 213; *Sherman* v. *Flack,* 283 id. 457; *Tea* v. *Millen,* 257 id. 624; *Glover* v. *Condell,* 163 id. 566, and other similar cases cited and relied upon by appellants, are cases not within the rule in *Shelley's case.* Those cases deal with the rule of the acceleration of remainders where the life estate fails, as applied to cases not within the rule in *Shelley's case.* They are not in point here.

Counsel for appellants have cited innumerable cases in support of the propositions that the intention of the testator

must prevail, and that he has the right to dispose of his property in any manner he may think proper. This rule, however, is subject to the limitation that he cannot make any disposition of his effects in violation of any established rule of law. *Gray* v. *Shinn,* 293 Ill. 573.

What is said above applies with even greater force to the second and third causes of action, as stated in counts two and three of the complaint. Count two of the complaint is based upon the seventh paragraph of the will, which is as follows:

"Seventh: I also give, devise and bequeath to John Adams, Emma Adams, and Ellen Tate equally, (here describing another tract of land) to have and to hold unto John Adams, and Ellen Tate for and during their natural lives, and at their deaths, to descend to their heirs respectively."

Clearly, by this paragraph of the will the testator intended to devise to his daughter Ellen Tate a one-third undivided interest in the real estate therein described, for and during her natural life and, at her death, "to descend to her heirs." This is a devise of a life estate to Ellen without any conditional or other limitation, with remainder over to her heirs, unless the testator used the word "heirs" in some other sense.

The third cause of action, stated in the third count of the complaint, is based upon the fourth paragraph of the will. This paragraph, in so far as here material, reads as follows:

"I also give, devise and bequeath to John Adams, (here describing certain real estate) with all other land devised to John Adams, he is to hold for and during his natural life, and at his death, then it shall descend to his heirs. I also give, devise and bequeath to John Adams, (here describing another tract of land) to have and to hold for and during his natural life, and at his death, to descend as above set forth."

By this paragraph, the testator clearly devised to his son, John Adams, the land therein described, to hold "for and during his natural life," with remainder over to his heirs. The life estate devised is subject to no conditions or limitations.

The devises found in these paragraphs of the will, are clearly within the rule in *Shelley's case,* unless the testator intended the word "heirs," as used by him in said paragraphs, to mean the children of the life tenants, and not their heirs, generally.

It is strenuously insisted by appellants that in each of the paragraphs of the will here involved, the testator used the word "heirs," as meaning "children," of the life tenants. Many cases are cited which hold that the word "heirs" will be so construed whenever necessary to effectuate the intention of the testator, expressed in the will. It is further held that for the purpose of determining the sense in which the testator used the word "heirs," the entire will, together with the circumstances surrounding the testator, at the time of its execution, may be examined and taken into consideration.

The rule is well settled that there is always a strong legal presumption that the word "heirs," in a will, is used in its technical sense as denoting the whole of the indefinite line of inheritable succession from generation to generation. *Havely* v. *Comerford, supra; Carpenter* v. *Hubbard,* 263 Ill. 571; *Meeker* v. *Steepleton, supra.*

The word "heirs" is to be given its technical meaning when found in a will, unless when the entire language of the will is considered, it is plain that the testator did not so intend. *James* v. *Hawkins,* 299 Ill. 204; *Stisser* v. *Stisser,* 235 id. 207; *Carpenter* v. *Hubbard, supra.*

The word "heirs" is a technical word with a fixed legal meaning, and, when used in a will, unless controlled by, or inconsistent with the context, must be interpreted according to its strict technical meaning, as importing those persons

designated by law to succeed to the estate in case of intestacy. *Potter* v. *Potter,* 306 Ill. 37; *Belleville Savings Bank* v. *Aneshaensel,* 298 id. 292; *Lee* v. *Roberson,* 297 id. 321; *Alexander* v. *Northwestern Masonic Aid Ass'n,* 126 id. 558; *Richards* v. *Miller,* 62 id. 417; *Rawson* v. *Rawson,* 52 id. 62.

"Heirs," in the legal meaning of the term, are those persons, whoever they may be, upon whom the law, at the death of the ancestor, would cast the inheritance, thus including all possible heirs to take in succession from generation to generation, under the name of heirs of the ancestor. *Fowler* v. *Black,* 136 Ill. 363.

A careful examination of the entire will fails to disclose a single word or expression which even tends to indicate the testator used the word "heirs" in any other than its technical sense. No circumstances existing at the time of the execution of the will are disclosed by the will itself, and none are alleged in the complaint, which, in the remotest degree, tend to indicate that the testator, by the use of the word "heirs," intended to limit the inheritances to the "children" of his daughter Ellen and his son John. As already observed, the legal presumption is that, by the word "heirs," he intended to refer to the whole of the indefinite line of inheritable succession upon whom, at the death of his daughter Ellen and his son John, the law would cast the inheritance, thus including all possible heirs to take in succession from generation to generation.

It is our conclusion that the testator must be conclusively presumed to have used the word "heirs" in its technical, legal sense, and that no other construction can be placed upon that term, as used by him, from anything appearing in the will itself or alleged in either count of the complaint.

The finding and the decree of the chancellor were correct, and that decree is, in all respects, affirmed.

*Decree affirmed.*