WEATHERLY v. PURCELL.

4-9286                                         234 S. W. 2d 32

Opinion delivered November 20, 1950.

*Phil Herget* and *Kirsch & Cathey*, for appellant.

*Lee Ward,* for appellee.

LEFLAR, J.   William H. and John J. Purcell brought ejectment against W. R. Weatherly, claiming title to certain land by reason of a deed executed by their grandfather to their father.   Defendant Weatherly by answer denied that the Purcells had title; and also by cross-complaint asserted that, if title should be found to be in the Purcells, he was entitled to reimbursement under Ark. Stats., § 34-1423, for the value of improvements made upon the land during his prior occupancy. At the trial the Circuit Judge held that as a matter of law the Purcells had the title, and submitted to the jury only the question as to whether and in what amount Weatherly had made improvements upon the land within the meaning of § 34-1423.   On this issue the jury returned a verdict in Weatherly's favor for $7,760.00.   Now, Weatherly appeals from that part of the judgment which held title to be in the Purcells, and the Purcells cross-appeal from the award to Weatherly for improvements made.

(1)   The deed in question, from the Purcells' grandfather to their father, was executed in 1889.   In the granting clause it conveys the land to "John E. Purcell and his bodily heirs."   The recitation in the *habendum*

is "to have and to hold the aforegranted premises to the said John E. Purcell and his heirs aforesaid in fee simple forever." Then the covenanting clause runs in favor of "the said John E. Purcell his heirs and assigns forever." And finally the release of dower clause, signed by the grantor grandfather's wife, is "unto the said John E. Purcell his heirs and assigns."

The grantee John E. Purcell occupied the land from 1889 to 1930, when he conveyed to defendant Weatherly, purporting to transfer a fee simple estate. John E. Purcell died in 1949, leaving plaintiffs William H. and John J. Purcell as the heirs of his body.

Weatherly's claim to title is based on the theory that the deed, read as a whole, conveyed to John E. Purcell a fee simple estate, which was in turn conveyed to Weatherly by the 1930 deed. The theory of the plaintiffs, the Purcells, is that the deed conveyed only a common law fee tail estate which, by Ark. Stats., § 50-405, is made into a life estate in the first grantee followed by a remainder in fee simple to the heirs of the life tenant's body. Under this theory John E. Purcell could convey to Weatherly no greater interest than his own life estate which ended in 1949, at which time the plaintiffs as remaindermen became entitled to possession.

We are definitely committed to the rule that the effect of a deed is not to be determined by the words of the granting clause alone, but is to be discovered from the language of the instrument as a whole. Where there is inconsistency between the granting clause and the *habendum,* the words of the *habendum* will prevail if, looking at "the four corners of the deed," it is determined that they represent the true intent of the grantor as expressed by the whole deed. *Luther* v. *Patman,* 200 Ark. 853, 141 S. W. 2d 42; *Beasley* v. *Shinn,* 201 Ark. 31, 144 S. W. 2d 710, 131 A. L. R. 1234; *Stewart* v. *Warren,* 202 Ark. 873, 153 S. W. 2d 545; *Carter Oil Co.* v. *Weil,* 209 Ark. 653, 192 S. W. 2d 215; *Coffelt* v. *Decatur School Dist.,* 212 Ark. 743, 208 S. W. 2d 1; *McBride* v. *Conyers,* 212 Ark. 1034, 208 S. W. 2d 1006. And see Restatement, Property, § 242(c).

A majority of the Court have concluded that no inconsistency appears in the present deed, that Weatherly had only an estate *pur autre vie* which is now ended, and that the Purcells are entitled to possession as remaindermen. The granting clause of the deed runs to "John E. Purcell and his bodily heirs." These words by themselves would create a fee tail at common law. The *habendum* is "to the said John E. Purcell and his heirs aforesaid in fee simple forever." The "heirs aforesaid" to which the *habendum* refers are "his bodily heirs" as set out in the granting clause. By our statute (§ 50-405) the legal effect of a gift to P and his bodily heirs is a life estate to P and a fee simple to the "heirs aforesaid," to-wit, P's bodily heirs. That is exactly what the *habendum* called for. Under this view, there is in the deed no conflict of language calling for interpretation of the instrument as a whole. The language in the covenant and release of dower clauses is deemed to refer only to the particular heirs whose relevance to the conveyance is fixed by the granting clause and *habendum,* inasmuch as the later clauses in the deed serve incidental purposes only, and do not purport to define the estate conveyed.

This view is supported by *Corbin* v. *Healy,* 20 Pick. (Mass.) 514, quoted and followed in our own case of *Dempsey* v. *Davis,* 98 Ark. 570, 136 S. W. 975. In *Corbin* v. *Healy* the conveyance was to "Rhoda and to her heirs born of her body" . . . "to have and to hold the same" to her "and her heirs forever," followed by covenants to her "and her heirs as aforesaid." The Massachusetts court, by SHAW, C. J., "conceded that the *habendum* may sometimes enlarge or diminish the grant, when it is so worded as to show a clear intention to do so. But here the *habendum* is not in terms, to hold the land, but to hold 'the same'; that is, the limited estate in the land before granted, which was an estate tail; and then the generality of the word 'heirs' in the *habendum* may be well construed to be limited to those heirs, who by law could take that estate, namely heirs of her body." Then the court said that the term "heirs as aforesaid"

as it appeared in the covenant "must be understood heirs in tail, entitled to take." [1]

(2) The so-called "Betterments Act," Ark. Stats., §§ 34-1423 *et seq.*, permits recovery of the value of improvements made and taxes paid by any person who, "believing himself to be the owner, either in law or equity, under color of title, has peaceably improved . . . any land which upon judicial investigation shall be decided to belong to another."

The evidence in the present case indicates without question that up until 1946 everyone who had anything to do with the land assumed that the 1889 deed conveyed a fee simple title to John E. Purcell. John E. Purcell executed a deed in 1930 purporting to convey a fee simple to Weatherly. That gave Weatherly "color of title" within the meaning of the Betterments Act. The fact that John E. Purcell's own deed, which did not give him a fee simple (as we today determine), was on record did not keep Weatherly from "believing himself to be the owner," as prescribed by the statute. *Beard* v. *Dansby,* 48 Ark. 183, 2 S. W. 701; *Shepherd* v. *Jernigan,* 51 Ark. 275, 10 S. W. 765. It is not necessary now to review all the evidence introduced; it suffices to say that when Weatherly made the improvements upon the land for which he now seeks reimbursement he had no idea that he owned only an estate *pur autre vie* while John E. Purcell lived. [2] He peaceably improved the land while in possession under color of title believing himself to be the owner in fee simple. That entitled him to recover under § 34-1423.

Finally, the Purcells object to the manner in which the betterments issue was presented to the jury, in that (1) the Circuit Judge refused to give an instruction that

---

[1] *Fender* v. *Rogers,* 185 Ark. 191, 46 S. W. 2d 804, may be distinguished by the fact that no words defining the estate granted were placed in the granting clause, and the apparently contradictory language all appeared in the *habendum.* The Court thus undertook to discover only the meaning of the two sets of words used in the *habendum.*

[2] Compare *Douglas* v. *Hunt,* 98 Ark. 320, 136 S. W. 170, and *Graves* v. *Bean,* 200 Ark. 863, 141 S. W. 2d 50, in both of which the occupant had been informed, *before* making improvements, of the outstanding claim to a remainder following his own life estate.

"a life tenant has a right to cut only such timber from the lands in his possession as constitute good husbandry and farming practices," and (2) that the jury in calculating the value of the improvements was not prevented from including increased values attributable to changed economic conditions rather than to the improvements themselves. As to the first of these objections it is enough to point out that the only issue upon which the proffered instruction might have been relevant was as to whether the clearing of the land constituted a reimbursable improvement, and on that issue the instruction was abstract and incomplete, therefore properly denied. And as to the second objection, the record shows that the Court specifically instructed the jury on the point, telling them to find the difference between what would be the value of the land *at the present time* if the improvements had not been made and its present value with the improvements.

We find no error in the proceedings below. The judgment is affirmed both on the appeal and the cross-appeal.