CARRIE TUCKER, ET AL V. EDYTH L. WALKER

5-4801                                      437 S.W. 2d 788

Opinion Delivered February 17, 1969

[Rehearing denied March 24, 1969.]

178

*Murphy & Arnold* for appellants.

*Sullivan & Causbie* for appellee.

Conley Byrd, Justice.    The trial court held that a 1905 deed from Samuel J. and Molly Walker to Samuel J. Walker Jr. created a fee tail estate— i.e., a life estate in Samuel J. Walker Jr., with a contingent remainder to the heirs of his body.    Based upon such finding, it awarded possession of the lands here involved to appellee, Edyth L. Walker; awarded betterments to appellants Carrie Tucker, Iris Heasley and Jim Fuhr in the amount of $2500, and betterments to A. W. Hill, W. A. Hill, Mrs. Gus Lewis, Charles Walter Hill, Mary Jo Hill Christensen, Barbara Hill Carter, and Linda Sue Hill McDuffey in the amount of $2200; and denied damages

for breach of covenant against appellee, Etna Walker, the wife of Samuel J. Walker Jr., Helen Walker Blaney and Edyth L. Walker as a guardian of Merle E. Walker. The appellants, Carrie Tucker, et al, and A. W. Hill, et al, appeal. For reversal they relied upon the following points:

I. If appellants be dispossessed in this case then damages should be allowed for breach of warranty.

II. The deed from Samuel J. Walker, Sr., et ux, to Samuel J. Walker, Jr., considered with the "attendant" circumstances, should be interpreted as creating a fee simple and not a fee tail; or, alternatively, the deed should be reformed to create a fee simple which was obviously intended by all parties.

III. Applying the rule of the destructibility of contingent remainders, Walker, Jr., had a fee simple.

Appellee Edyth L. Walker cross appeals contending that the improvements placed on both tracts of land were not in good faith and that the court erred in its valuation of improvements.

The record shows the deed dated June 5, 1905, recites, "that we, Samuel J. Walker and Molly I. Walker, his wife, for and in consideration of $1,000 into our hands this date paid, do hereby grant, bargain, sell and convey unto the said Samuel J. Walker Jr. and unto his bodily heirs and assigns forever, the following lands lying in the County of Sharp and State of Arkansas, to-wit: . . . ."

The habendum clause reads, "To have and to hold the same unto the said Samuel J. Walker Jr. and unto his heirs and assigns forever, with all appurtenances thereunto belonging". This deed was prepared by

James Davie, a newly appointed Justice of the Peace. The record shows he used a form and filled in the blanks by hand. Mr. Davie was a farmer and carpenter in the area.

In 1912, Walker Jr. and Etna Walker, his wife, conveyed the lands here involved to S. B. Turner by a general warranty deed. Walker thereafter moved to Oklahoma where he died in 1961. At the time of his death he owned, as an estate by the entirety with his wife, real estate valued at $4500. He was survived by Etna and two children, Helen Walker Blaney and Merle E. Walker. Before this suit was filed Helen sold her interest to Merle. Merle was incompetent and his wife Edyth was appointed his guardian.

Under the third point, appellants suggest that we should limit or curtail fee tail estates by applying the rule of destructibility of contingent remainders. We find no merit in this argument as applied to the facts here. By Ark. Stat. Ann. § 50-405 (1947) and §§ 50-405.1—50-405.3 (Supp. 1967), the Legislature has undertaken not only to regulate the fee tail estate but also to provide a method for its dissolution. We see no reason why the court should go beyond established public policy.

Under point II, appellants argue that the 1905 deed to Samuel J. Walker Jr. created a fee simple title in Walker. In the case of *Weatherly* v. *Purcell*, 217 Ark. 908, 234 S.W. 2d 32 (1950), we had before us a conveyance to "John E. Purcell and his bodily heirs". The habendum clause there read, "To have and to hold the aforegranted premises to the said John E. Purcell and his heirs aforesaid in fee simple forever." We held that the deed created a fee tail estate. We think this decision is controlling of the issue involved here.

Under the second point appellants also argue that if the deed created a fee tail then it should be reformed

to create a fee simple which was obviously intended by all the parties. The only proof offered with reference to reformation of the deed was that the Justice of the Peace who drew the deed was a farmer and carpenter by trade; not admitted to practice law; and newly appointed as a Justice of the Peace. The only other evidence was that neither Samuel J. Walker Jr. nor his father were lawyers. We find this evidence insufficient to reform a deed executed by the parties. Furthermore the testimony of Cleo Chaplin, a nephew of Samuel J. Walker Jr., shows that his grandfather gave properties to all three of his children including Samuel Walker Jr., so that they couldn't sell their dowry.

Appellants' cross complaint against Etna Walker, the wife of Samuel J. Walker., is upon the theory that she covenanted with S. P. Turner to warrant and defend the title against all claims whatsoever. Their action against Helen Walker Blaney and Edyth L. Walker as guardian of Merle E. Walker is on the theory that as heirs of Samuel J. Walker Jr. and Etna Walker they have received property of their parents which could be used to satisfy the damages caused by the breach of their ancestors' covenant of warranty, see *Jones* v. *Franklin,* 30 Ark. 631 (1875).

The trial court was correct in holding that Helen and Merle Walker were not liable to the appellants for either one of two reasons. In the first place the record fails to show that either has received by inheritance any property either from Samuel J. Walker Jr. or their mother Etna Walker. The record only shows that Etna Walker died after the institution of these proceedings; that at the time of her death she owned property inventoried at a value of $4,500; and that she, by will, left the property to Helen. Of course until such time as the Oklahoma statute of non-claims has run, there is no way to determine whether Helen will receive any property from her mother. There is no showing that Merle Walker received any property from either his father or mother.

Etna Walker, the wife of Samuel Walker Jr., argues that she is not liable on the warranty because she only purported to waive her dowry in the deed and that under the existing law of 1905 such a contract by a married woman was void. The latter contention is made upon the authority of *Benton County* v. *Rutherford*, 33 Ark. 640 (1878). As we read our cases *Sparks* v. *Moore*, 66 Ark. 437, 56 S.W. 1064 (1908) and *Longino* v. *Smith*, 158 Ark. 162, 249 S.W. 557 (1923), married women became liable upon their contracts, including covenants of warranty, by the passage of Act 47 of 1895. This act is now codified as Ark. Stat. Ann. § 55-405 (1947). Furthermore our cases hold that a married woman joined as a grantor with her husband in a deed is liable on the covenant of warranty contained therein, *Spann* v. *Langston-Williams Lumber Co.* 184 Ark. 99, 40 S.W. 2d 791 (1931).

Recovery in such cases is limited to the purchase price, interest from the date of eviction, attorney's fees and court costs, *Wade* v. *Texarkana Building & Loan Association*, 150 Ark. 99, 233 S.W. 937 (1921); *Fox* v. *Pinson*, 182 Ark. 936, 34 S.W. 2d 459 (1930). Also where the land to which the covenant runs has been divided among other grantees, the damages suffered by each subsequent grantee is to be prorated according to value, *Lane* v. *Stitt*, 143 Ark. 27, 219 S.W. 340 (1920). Therefore we hold that the trial court erred in not awarding damages against Etna Walker's estate since there was ample testimony showing the value of each of the two parcels carved out of the original covenanted land.

Appellees' contention on a cross appeal that the betterments to the lands were not made in good faith is not sustained by the record. The only evidence to indicate any lack of good faith is that the original deed from Samuel Walker and his wife Molly Walker to Samuel Walker Jr. was at all times in the possession of Carrie Tucker. There is ample other evidence to the

effect that Carrie Tucker had no actual knowledge of the provision in the deed until sometime in the 1950's.

Neither do we find any merit in the contentions that the court erred in its valuation of the improvements. Eugene Street valued the improvements on the Tucker farm at $2500 to $3000, on the Hill farm $3000 to $3500. Witness Boyd Carpenter valued the Tucker farm improvements at $3000 and the Hill farm improvements at $3000. We hold this testimony amply sufficient to sustain the trial court's assessment of betterments, after deductions for rents, in the amount of $2500 to the Tucker farm and $2200 to the Hill farm.

Here the damages suffered by the appellants greatly exceed the $8,000 purchase price stated in the warranty deed from Walker Jr. and his wife Etna. We remand the case as against the estate of Etna Walker, only, to the trial court for purpose of prorating the $8,000 limit on Etna's liability between appellants Carrie Tucker, et al, and A. W. Hill, et al, together with court costs, reasonable attorney's fee and interest from date of eviction.

Affirmed in part and reversed in part.

Justice FOGLEMAN concurs.

JOHN A. FOGLEMAN, Justice. I concur in the majority opinion. Yet there is one important portion treated therein about which I am uncertain. That is the basis for disposition of point three, having to do with the doctrine of destructibility of contingent remainders. I cannot tell whether the majority is rejecting or approving the doctrine. The opinion does not relate the particular facts which make the doctrine inapplicable.

Samuel P. Walker had one son and two daughters, one of whom died without issue. After his conveyance to Samuel P. Walker, Jr., but before the latter's deed to Turner, the senior Walker died and no administration was had upon his estate. It seems that the reversion in

the property in question would have then vested in his surviving children. We do not know when the daughter having no issue died, so it is possible that the reversion in an undivided one-half passed to the grantees in the deed from Walker, Jr. under the after-acquired title statute. To the extent that the reversion passed to Turner, there was a merger which would have destroyed any contingent remainder pro tanto, under the rule.

I agree that the conveyance by Samuel J. Walker, Jr., the life tenant, could not operate to effect a destruction of the contingent remainder. A conveyance by a life tenant to a third party is not a surrender of the life estate. See *Le Sieur* v. *Spikes,* 117 Ark. 366, 175 S.W. 413, *Pierce* v. *Lowe,* 221 Ark. 796, 256 S.W. 2d 43; *Weatherly* v. *Purcell,* 217 Ark. 908, 234 S.W. 2d 32. Furthermore, the surrender by a life tenant necessary for a destruction of the contingent remainder must be made to the owner of the next vested estate rather than to a stranger to the title. *Rogers* v. *Ogburn,* 116 Ark. 233, 172 S.W. 867; *Hayes* v. *Goldman,* 71 Ark. 251, 72 S.W. 563; *Gray* v. *Shinn,* 293 Ill. 573, 127 N.E. 755, (1920); 31 C.J.S. Estate § 93.

Under the rule a contingent remainder must vest, if at all, at the termination of its supporting freehold estate. Simes & Smith, *Law of Future Interest,* 2d Ed. § 193 (p. 216); *Gray* v. *Shinn, supra;* Moynihan, *Survey of Real Property,* § 7; 31 C.J.S. Estates § 91. This termination may be accomplished by merger of separate vested interests in one owner. Simes and Smith, *Law of Future Interest,* supra; *Rogers* v. *Ogburn,* supra. A life estate is a vested interest. Ark. Stat. Ann. § 50-405 (1947); *Black* v. *Webb,* 72 Ark. 336, 80 S.W. 367. The reversion is also a vested interest. See *Wilson* v. *Pharris,* 203 Ark. 614, 158 S.W. 2d 274, *Davis* v. *Davis,* 219 Ark. 623, 243 S.W. 2d 739. The merger of the life estate and the reversion would destroy the contingent remainder. *Bennett* v. *Morris,* 5 Rawl. 8 (Pa. 1835); *Blocker* v. *Blocker,* 103 Fla. 285, 137 So. 249 (1931);

Simes and Smith, *Law of Future Interest,* 2d Ed. § 197 (p. 216); *Gray* v. *Shinn,* supra.

The doctrine and its applicability in Arkansas have been treated in an extensive *Law Review* article by Professor Samuel F. Fetters, 21 Ark. L. R. 145. While he takes the position that this court has never expressly held the doctrine applicable or inapplicable, yet he calls attention to the decisions in a number of cases in which the result would not have been possible if the doctrine had been applied. *Lathrop* v. *Sandlin,* 223 Ark. 774, 268 S.W. 2d 606; *Dyer* v. *Lane,* 202 Ark. 571, 151 S.W. 2d 678; *Davis* v. *Davis,* 219 Ark. 623, 243 S.W. 2d 739. While the issue may not have been raised in these cases, it seems that the court might well have applied the doctrine in some of them if it were the rule in Arkansas.

Although the common law was adopted by Ark. Stat. Ann. § 1-101 (Repl. 1956), a provision was made for alteration of common law rules by the General Assembly. As suggested by Professor Fetters, Act 163 of 1957, Ark. Stat. Ann. § 50-405.1, et. seq. (Supp. 1967) is wholly inconsistent with the existence of the common law rule of destructibility of contingent remainders. This act provides for the dissolution of an estate existing by reason of a conveyance to a grantee and the heirs of his body. The method of dissolution prescribed is a conveyance of the fee by the creator of the life estate, all life tenants and all living persons who might be remaindermen in event of the death of the life tenant. If the doctrine of destructibility were applied, with its provision for destruction by merger, there would be no necessity for the statute. The grantor might dissolve the estates created simply by conveying his reversion to the holder of the life estate under the doctrine of merger. We should certainly presume that the General Assembly did not perform a vain, futile or fruitless act. 2 Horack's Sutherland, Statutory Construction, 327 § 4510; 50 Am. Jur. 358, § 357; 82 C.J.S. Statutes. § 316. See *Henderson* v. *Gladish,* 198 Ark. 217, 128 S.W.

2d 257. Since the estates might also be dissolved by conveyance by the holder of the reversion and the holder of the life estate to a third person, under the doctrine of merger, the passage of Act 163 would be a wholly useless act, if the common law doctrine of destructibility remains effective. Consequently, if the doctrine did exist in Arkansas prior to the adoption of Act 163, Act 163 is sufficiently inconsistent therewith to constitute an implied repeal.